**FILED**

NOV - 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ROBERT KURSAR <br> #17-2345 Cranley Drive <br> Surrey, BC Canada, V4A-9G5 <br> . (604)726-5002 <br>     Plaintiff, <br><br>        v. <br><br> TRANSPORTATION SECURITY <br> ADMINISTRATION <br> 601 South 12th Street <br> Arlington, VA 22202-4220 <br><br>     and <br><br> WILLIAM BLAKE, JR. <br> Federal Air Marshal Service <br> Seattle Field Office, ACT-700N <br> 500 Powell Avenue, SW <br> Renton, WA 98055 <br><br>     and <br><br> DOES #1-10 <br><br>     Defendants. | Case: 1:07-cv-02001 <br> Assigned To : Walton, Reggie B. <br> Assign. Date : 11/6/2007 <br> Description: Admn. Agency Review |

\* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff Robert Kursar brings this action against Defendants Transportation Security Administration, William Blake, Jr. and Does #1-10 pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. § 701 et seq., the Privacy Act, 5 U.S.C. § 552a et seq., the All Writs Act, 28 U.S.C. § 1651, TSA's internal regulations and the U.S. Constitution.

1

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552a, 702 and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate in the District under 5 U.S.C. § 552a(g)(5), 703 and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Robert Kursar ("Kursar") was a Federal Air Marshal. He is a dual U.S. and Canadian citizen and currently resides in Canada.

4. Defendant Transportation Security Administration ("TSA") is an agency as defined in 5 U.S.C. § 552a(a)(1) and 701 and is in possession and/or control of the records requested by Kursar which are the subject of this action.

5. Defendant Special Agent in Charge William Blake, Jr. ("SAC Blake") was a former supervisor of Kursar who either unlawfully or unethically caused Kursar's employment with the TSA to be terminated.

6. Does #1-10 are unknown officials of the TSA who either acted illegally or outside of their scope of employment by disseminating inaccurate and defamatory information concerning Kursar to a private civilian employer.

## FACTS

7. On April 7, 2002, Kursar was selected for an excepted service position within the TSA as a Federal Air Marshal. His appointment was subject to a one-year probation period.

8. On April 22, 2002, Kursar's supervisor, SAC Blake, had a conversation with Major Wellington Y. Hom ("Major Hom"), who had served with Kursar in an Army Reserve unit in 1994 and 1995. Upon information and belief, Major Hom provided false and inaccurate derogatory information to SAC Blake concerning Kursar.

9. On April 23, 2002, SAC Blake informed Kursar that were some questions regarding his employment application and that he would be relieved of his duties and

placed on paid administrative suspension pending further background investigation. Kursar was not provided any details of the issues in question at that time.

10. On April 25, 2002, SAC Blake issued a written notice of his intent to terminate Kursar during his probationary period for submitting false or incorrect information on his employment application and Standard Form 86 ("SF 86"), "Questionnaire for National Security Positions." Specifically, the written notice indicated that Kursar had failed to state he had been terminated from the Washington Army/Air National Guard and that he never had a security clearance revoked or suspended. The letter noted that Kursar had five days to respond to the written notice.

11. By letter dated April 29, 2002, Kursar submitted his written reply with attachments, denying that he had intentionally provided false or incorrect information. Kursar made sure to make clear his objection to the short time frame that had been afforded to him to draft his appeal. Kursar also requested an oral hearing but was denied.

12. By letter dated May 3, 2002, Kursar was advised by SAC Blake that his employment had been terminated to promote the "efficiency of the service." The letter stated that the termination was effective on May 8, 2002.

13. On March 3, 2003, Kursar filed an appeal of his termination with the Merit Systems Protection Board ("MSPB"), claiming that the TSA's actions had been committed in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA").

14. By letter dated August 26, 2004, Administrative Judge John W. Tapp ("Tapp") denied Kursar's request for relief under USERRA, finding that Kursar could not demonstrate that his termination had been based on discrimination due to his reserve status or retaliation for his prior USERRA complaint. Tapp did, however, state that he agreed with Kursar "that an adverse action most likely could not be sustained based on the charges brought and the evidence adduced," as there was "no evidence to support either the charge that appellant failed to state that he had been terminated from the Washington State Army/Air National Guard or the charge that appellant falsely stated

that he had never had a security clearance revoked or suspended." Tapp noted that Blake's own testimony demonstrated that Blake relied solely on Hom's allegations in arriving at the decision to terminate Kursar, and that Blake, aware of Kursar's limited appeal rights as a probationary employee, took no action to determine the veracity or credibility of Hom's allegations. Tapp commented that Blake "went with his gut feeling to terminate appellant rather than attempting to sort out the accuracy of the information."

15. Subsequent to Kursar's termination from the TSA and while he was pursuing his administrative rights through the MSPB, Kursar sought employment with a private civilian employer with whom he had worked for five years prior to his acceptance of the Federal Air Marshall position. Upon being asked by the private civilian employer for an explanation of the reasons behind Kursar's termination from the TSA, Kursar, as required by law, provided information detailing the justification cited by Blake. Despite Kursar's attempts to explain the flaws underlying Blake's arguments, the private civilian employer informed Kursar that they could not rehire him and risk their own reputation.

16. In or around April 2006, Kursar applied for a position with a private civilian employer. By letter dated May 19, 2006, Kursar was offered employment conditioned on his ability to pass a suitability or background investigation. Kursar was not required to nor did he sign any release authorization permitting disclosure of any records pertaining to him.

17. On or about May 2006, the employer, through use of a background investigator, initiated the background review of Kursar and undertook extensive field investigations of Kursar's background.

18. Upon information and belief, the TSA, through one of its officials, intentionally disclosed inaccurate and defamatory information concerning Kursar to the background investigator, namely that Kursar had been terminated for submitting false or incorrect information on his SF 86. Subsequently, the background investigator received copies of the relevant documents.

19. By letter dated June 16, 2006, Kursar was informed that he had been found

unsuitable for employment and that his conditional offer of employment had been rescinded. The letter specifically stated that the decision to rescind the offer was "based on findings of the US Department of Transportation that you deliberately provided false or misleading information concerning relevant and material matters to authorities or officials in conjunction with the government security investigation."

## FIRST CAUSE OF ACTION

## (APA/U.S. CONSTITUTION – DENIAL OF DUE PROCESS IN

## TERMINATION OF FEDERAL EMPLOYEE)

20. Kursar repeats and realleges the allegations contained in paragraphs 1 through 19 above, inclusive.

21. On April 7, 2002, Kursar was selected for an excepted service position with TSA as a Federal Air Marshal. His appointment was subject to a one-year probation period.

22. As a Federal Air Marshall with the TSA, Kursar was possessive of all constitutional, statutory and regulatory rights as any other probationary TSA federal employee. These include with respect to, among other things, the usual rights, privileges and benefits that are accorded probationary federal employees.

23. By letter dated May 3, 2002, Kursar was informed that his employment with the TSA was being terminated for submitting false or incorrect information on his SF 86.

24. The TSA failed to accord Kursar any due process and denied him the full administrative rights that probationary federal employees in the employ of the TSA must be provided before their employment is terminated. This included, but was not limited to, the right to a hearing to refute the charge of submitting false or incorrect information.

25. The TSA, its officers and employees, to include but not limited to, SAC Blake, committed and undertook actions that were arbitrary, capricious and/or an abuse of discretion pertaining to Kursar, took actions that were unwarranted by the facts, unsupported by substantial evidence, in violation of internal regulations and federal statutes, contrary to constitutional right, power, privilege, or immunity, or in excess of

statutory jurisdiction, authority, or limitations, or short of statutory right thereby causing Kursar to suffer legal wrongs under the Administrative Procedures Act.

26. The TSA's actions caused Kursar significant emotional, professional and economic harm.

### SECOND CAUSE OF ACTION
### (APA – FAILURE TO FOLLOW REGULATIONS OR STATUTES)

27. Kursar repeats and realleges the allegations contained in paragraphs 1 through 19 above, inclusive.

28. On April 7, 2002, Kursar was selected for an excepted service position with TSA as a Federal Air Marshal. His appointment was subject to a one-year probation period.

29. As a Federal Air Marshall with the TSA, Kursar was possessive of all constitutional, statutory and regulatory rights as any other probationary TSA federal employee. These include with respect to, among other things, the usual rights, privileges and benefits that are accorded probationary federal employees.

30. By letter dated May 3, 2002, Kursar was informed that his employment with the TSA was being terminated for submitting false or incorrect information on his SF 86.

31. The TSA failed to accord Kursar any due process and denied him the full administrative rights that probationary federal employees in the employ of the TSA must be provided before their employment is terminated. This included, but was not limited to, the right to a hearing to refute the charge of submitting false or incorrect information.

32. The TSA, its officers and employees, to include but not limited to, SAC Blake, committed and undertook actions in violation of internal regulations and federal statutes thereby causing Kursar to suffer legal wrongs under the Administrative Procedures Act.

33. The TSA's actions caused Kursar significant emotional, professional and economic harm.

## THIRD CAUSE OF ACTION
## (NAME CLEARING HEARING)

34. Kursar repeats and realleges the allegations contained in paragraphs 1 through 19 above, inclusive.

35. On April 7, 2002, Kursar was selected for an excepted service position with TSA as a Federal Air Marshal. His appointment was subject to a one-year probation period.

36. As a Federal Air Marshall with the TSA, Kursar was possessive of all constitutional, statutory and regulatory rights as any other probationary TSA federal employee. These include with respect to, among other things, the usual rights, privileges and benefits that are accorded probationary federal employees.

37. By letter dated May 3, 2002, Kursar was informed that his employment with the TSA was being terminated for submitting false or incorrect information on his SF 86.

38. The TSA failed to accord Kursar any due process and denied him the full administrative rights that probationary federal employees in the employ of the TSA must be provided before their employment is terminated. This included, but was not limited to, the right to a hearing to refute the charge of submitting false or incorrect information.

39. The TSA, through the actions of SAC Blake, unlawfully and/or unethically caused Kursar's employment with the TSA to be terminated. This included, but was not limited to, the dissemination of false and defamatory information, which had not been independently verified, concerning Kursar throughout certain divisions of the TSA that effectively stigmatized him and caused his employment with the TSA to be terminated.

40. On one or more occasions since Kursar's termination the TSA, and one or more of the individual defendants, has intentionally interfered with Kursar's efforts to obtain employment in his chosen field of profession with private civilian employers, particularly by, but not limited to, disseminating inaccurate and defamatory information to private civilian employers concerning the basis behind the TSA's decision to terminate Kursar's employment.

41.   The effect of the TSA's actions is to stigmatize and harm Kursar and, as a practical matter, serves to impugn his reputation and restrict his ability to obtain employment in his chosen field of profession without affording him any administrative rights as required by law to challenge such a decision.

42.   The TSA is not permitted, notwithstanding any contractual language to the contrary, to violate Kursar's Constitutional rights, as set forth by the Constitution of the United States.

43.   The TSA improperly, unlawfully and unconstitutionally terminated Kursar's employment.

44.   As no appropriate and effective opportunity was ever provided Kursar for an opportunity to refute the allegations made against him or clear his name, he is entitled to a name-clearing hearing and a written decision arising therefrom.

45.   The TSA's actions caused Kursar significant emotional, professional and economic harm.

## FOURTH CAUSE OF ACTION
## (PRIVACY ACT)

46.   Kursar repeats and realleges the allegations contained in paragraphs 1 through 19 above, inclusive.

47.   The TSA maintains records within one or more Privacy Act Systems of Records that pertain to Kursar.

48.   On April 7, 2002, Kursar was selected for an excepted service position with TSA as a Federal Air Marshal.  His appointment was subject to a one-year probation period.

49.   As a Federal Air Marshall with the TSA, Kursar was possessive of all constitutional, statutory and regulatory rights as any other probationary TSA federal employee.  These include with respect to, among other things, the usual rights, privileges and benefits that are accorded probationary federal employees.

50.   By letter dated May 3, 2002, Kursar was informed that his employment with

the TSA was being terminated for submitting false or incorrect information on his SF 86.

51.   The TSA, through the actions of SAC Blake, unlawfully and/or unethically caused Kursar's employment with the TSA to be terminated.  This included, but was not limited to, the dissemination of false and defamatory information, which had not been independently verified, concerning Kursar throughout certain divisions of the TSA that effectively stigmatized him and caused his employment with the TSA to be terminated.

52.   On one or more occasions since his termination the TSA, and one or more of the individual defendants, has intentionally interfered with Kursar's efforts to obtain employment in his chosen field of profession with private civilian employers, particularly by, but not limited to, disseminating inaccurate and defamatory information to private civilian employers concerning the basis behind the TSA's decision to terminate Kursar's employment.

53.   The TSA willfully and/or intentionally terminated Kursar's employment with the TSA in a manner that was derogatory to his reputation.  The TSA compiled information and arrived at conclusions that were irrelevant, false, malicious and defamatory, incomplete, inaccurate, and untimely as to Kursar, who was never provided an appropriate and effective opportunity to review or challenge any evaluation or determination that led to his termination.

54.   Since Kursar's termination, the TSA and one or more of the individual defendants has failed to maintain Kursar's records with such accuracy, relevance, timeliness and completeness as is reasonably necessary to denote the basis for the termination of Kursar's employment with the TSA.

55.   The TSA's failure to collect information directly from Kursar resulted in adverse determinations concerning his rights, benefits, privileges, or opportunities in violation of 5 U.S.C. § 552a(e)(2) and (g)(1)(C).

56.   The TSA, its employees and officers, to include one or more of the individual defendants, knew or should have known that that their actions were improper, unlawful and/or in violation of the Privacy Act.

by, but not limited to, disseminating inaccurate and defamatory information to private civilian employers concerning the basis behind the TSA's decision to terminate Kursar's employment.

66.    The TSA and one or more of the individual defendants has failed to maintain Kursar's records with such accuracy, relevance, timeliness and completeness as is reasonably necessary to denote the basis for the termination of Kursar's employment with the TSA.

67.    The TSA, and one or more of the individual defendants, has already disseminated, both verbally and in writing, inaccurate information from Kursar's Privacy Act System of Records to at least one private civilian employer that had hired Kursar, the result of which was the rescission of Kursar's employment offer.  The actions by the TSA related to the qualifications, character, rights or opportunities of, or benefits to Kursar and violated 5 U.S.C. § 552a(e)(5).

68.    The TSA, its employees and officers, to include one or more of the individual defendants, knew or should have known that that their actions were improper, unlawful and/or in violation of the Privacy Act.

69.    The TSA, its employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of Kursar's privacy rights.

70.    As a result of one or more of the defendants' violations of the Privacy Act, Kursar has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

**SIXTH CAUSE OF ACTION**

**(PRIVACY ACT)**

71.    Kursar repeats and realleges the allegations contained in paragraphs 1 through 19 above, inclusive.

72.    The TSA maintains records within one or more Privacy Act Systems of Records that pertain to Kursar.

73.    On April 7, 2002, Kursar was selected for an excepted service position with

TSA as a Federal Air Marshal. His appointment was subject to a one-year probation period.

74. As a Federal Air Marshall with the TSA, Kursar was possessive of all constitutional, statutory and regulatory rights as any other probationary TSA federal employee. These include with respect to, among other things, the usual rights, privileges and benefits that are accorded probationary federal employees.

75. By letter dated May 3, 2002, Kursar was informed that his employment with the TSA was being terminated for submitting false or incorrect information on his SF 86.

76. The TSA, through the actions of SAC Blake, unlawfully and/or unethically caused Kursar's employment with the TSA to be terminated. This included, but was not limited to, the dissemination of false and defamatory information, which had not been independently verified, concerning Kursar throughout certain divisions of the TSA that effectively stigmatized him and caused his employment with the TSA to be terminated.

77. On one or more occasions since his termination the TSA, and one or more of the individual defendants, has intentionally interfered with Kursar's efforts to obtain employment in his chosen field of profession with private civilian employers, particularly by, but not limited to, disseminating inaccurate and defamatory information to private civilian employers concerning the basis behind the TSA's decision to terminate Kursar's employment.

78. Prior to disseminating records about Kursar within the TSA and/or to persons other than an agency, the TSA and one or more of the individual defendants failed to make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes.

79. The TSA and one or more of the individual defendants have already disseminated inaccurate information from Kursar's Privacy Act System of Records to at least one private civilian employer that had hired Kursar, the result of which was the rescission of Kursar's employment offer. The actions by the TSA violated 5 U.S.C. § 552a(e)(6).

80. The TSA, its employees and officers, to include one or more of the individual defendants, knew or should have known that that their actions were improper, unlawful and/or in violation of the Privacy Act.

81. The TSA, its employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of Kursar's privacy rights.

82. As a result of one or more of the defendants' violations of the Privacy Act, Kursar has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

## SEVENTH CAUSE OF ACTION

### (FIFTH AMENDMENT LIBERTY INTEREST)

83. Kursar repeats and realleges the allegations contained in paragraphs 1 through 19 above, inclusive.

84. On April 7, 2002, Kursar was selected for an excepted service position with TSA as a Federal Air Marshal. His appointment was subject to a one-year probation period.

85. As a Federal Air Marshall with the TSA, Kursar was possessive of all constitutional, statutory and regulatory rights as any other probationary TSA federal employee. These include with respect to, among other things, the usual rights, privileges and benefits that are accorded probationary federal employees.

86. By letter dated May 3, 2002, Kursar was informed that his employment with the TSA was being terminated for submitting false or incorrect information on his SF 86.

87. The TSA failed to accord Kursar any due process and denied him the full administrative rights that probationary federal employees in the employ of the TSA must be provided before their employment is terminated. This included, but was not limited to, the right to a hearing to refute the charge of submitting false or incorrect information.

88. The TSA, through the actions of SAC Blake, unlawfully and/or unethically caused Kursar's employment with the TSA to be terminated. This included, but was not

limited to, the dissemination of false and defamatory information, which had not been independently verified, concerning Kursar throughout certain divisions of the TSA that effectively stigmatized him and caused his employment with the TSA to be terminated.

89. On one or more occasions since his termination the TSA, and one or more of the individual defendants, has intentionally interfered with Kursar's efforts to obtain employment in his chosen field of profession with private civilian employers, particularly by, but not limited to, disseminating inaccurate and defamatory information to private civilian employers concerning the basis behind the TSA's decision to terminate Kursar's employment.

90. The TSA is not authorized to operate in a manner whereby an individual can be denied "Liberty" without "due process of law" in contravention of the Fifth Amendment. The lack of due process rights accorded to Kursar deprived him of the ability to challenge the accuracy of the evidence upon which the TSA's decision rested.

91. The TSA's actions, and that of one or more of the individual defendants, have excluded Kursar from participating in his chosen profession. Should Kursar apply to work for a federal agency or a private civilian employer for a position that requires even the most rudimentary background investigation, the TSA will disseminate information it maintains about Kursar, to include known inaccurate and false information that will adversely impact upon his reputation and chances for additional employment opportunities. As a result, the TSA has effectively stigmatized Kursar's reputation and imparted a "status change" upon him that has implicated his liberty interests.

92. As a result, Kursar has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

WHEREFORE, Kursar requests that the Court award him the following relief:

(1) Declare and find that that the TSA violated the Administrative Procedure Act,

its internal regulations and/or statutes governing Kursar's termination;

(2) Declare and find that the defendants violated the Privacy Act by failing to collect information directly from Kursar, failed to maintain accurate, relevant, timely or complete records pertaining to Kursar and/or failed to make reasonable efforts to assure that such records regarding Kursar are accurate, timely, complete and relevant prior to dissemination;

(3) Declare and find that the defendants violated Kursar's liberty interest under the Fifth Amendment to the Constitution;

(4) Invoke its equitable powers to expunge all records or information that is inaccurate, derogatory or infringes upon Kursar's express or implied constitutional or statutory rights;

(5) Require the TSA to rescind its termination decision and afford Kursar appropriate due process;

(6) Require the TSA to reimburse Kursar for all associated expenses to resolve these disputes;

(7) Refer those TSA officials responsible for violating the Privacy Act for prosecution under 5 U.S.C. § 552a(i)(1);

(8) Award Kursar the costs of the action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law; and

(9) Grant such other relief as the Court may deem just and proper.


Date: October 25, 2007


Respectfully submitted,

Robert Kursar (*pro se*)
#17-2345 Cranley Drive
Surrey, BC CANADA
V4A-965
(604) 726-5002

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Robert Kursar      *99999* | Transportation Security Administration, *ETAL* |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF     999999
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT     11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert Kursar
#17-2345 Cranley Drive,
Surrey, British Columbia, CANADA
V4A-9G5

Case: 1:07-cv-02001
Assigned To : Walton, Reggie B.
Assign. Date : 11/6/2007
Description: Admn. Agency Review

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- O 1 U.S. Government Plaintiff
- ◉ 2 U.S. Government Defendant
- O 3 Federal Question (U.S. Government Not a Party)
- O 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### O A. Antitrust
- ☐ 410 Antitrust

### O B. Personal Injury/ Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ◉ C. Administrative Agency Review
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ⊗ 890 Other Statutory Actions (If Administrative Agency is Involved)

### O D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### O E. General Civil (Other)     OR     O F. Pro Se General Civil

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(4)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
5 USC 701, 5 USC 552a, 28 USC 2201, 28 USC 1651 Judicial review of final agency action, violation of Fifth Amendment Liberty Interest, Privacy Act

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ [_____]   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE ~~October 25, 2007~~  11-5-07  6   SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.