## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                      )
ROBERT KURSAR,                        )
                                      )
            Plaintiff,                )
                                      )
      v.                              )        Civil Action No. 07-2001  (RBW)
                                      )
TRANSPORTATION SECURITY               )
ADMINISTRATION, et al.,               )
                                      )
            Defendants.               )
_____)

### MEMORANDUM OPINION

Robert Kursar, the pro se plaintiff in this civil lawsuit, seeks judgments against the

Transportation Security Administration (the "TSA"), William Blake, Jr., and Does #1-10 under

the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (2000), the Administrative Procedure

Act, 5 U.S.C. §§ 551-559, 701-706, 1305, 3105, 3344, 4301, 5335, 5372, 7521 (2000) (the

"APA"), the Privacy Act of 1974, 5 U.S.C. § 552a (2000) (the "Privacy Act" or the "Act"), and

the All Writs Act, 28 U.S.C. § 1651 (2000), as well as "[the] TSA's internal regulations and the

[United States] Constitution."  Complaint (the "Compl.") at 1.  Currently before the Court is the

defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).  Upon carefully reviewing the plaintiff's complaint, the defendants' motion, and all

memoranda of law and exhibits relating to that motion,[1] the Court concludes that it must grant

the motion in part and deny it in part for the reasons that follow.

_____

[1] In addition to the plaintiff's complaint and the defendants' motion, the Court considered the following documents in reaching its decision: (1) the Memorandum in Support of Defendants' Motion to Dismiss (the "Defs.' Mem."), and (2) the Plaintiff's Opposition to Defendants' Motion to Dismiss (the "Pl.'s Opp'n").

## I. Background

The following facts are alleged in the plaintiff's complaint or are matters of public record.  The plaintiff, a "dual [United States] and Canadian citizen [who] currently resides in Canada," Compl. ¶ 3, "was selected" in April of 2002 "for an excepted service position within the TSA as a Federal Air Marshal," id. ¶ 7.  "His appointment was subject to a one-year probation period."  Id.

"On April 22, 2002," Blake, the Special Agent in Charge who supervised the plaintiff, "had a conversation with Major Wellington Y. Horn . . . , who had served with [the plaintiff] in an Army Reserve Unit in 1994 and 1995."  Id. ¶ 8.  The very next day, Blake "informed [the plaintiff] that there were some questions regarding his employment application and that [the plaintiff] would be relieved of his duties and placed on paid administrative suspension pending [a] further background investigation."  Id. ¶ 9.  Two days later, "Blake issued a written notice of his intent to terminate [the plaintiff] during his probationary period for submitting false or incorrect information on his employment application and Standard Form 86 ('SF[-]86')," otherwise known as the "'Questionnaire for National Security Positions.'"  Id. ¶ 10.  "Specifically, the written notice indicated that [the plaintiff] had failed to state [that] he had been terminated from the Washington Army/Air National Guard and that he had never had a security clearance revoked or suspended."  Id.

The plaintiff responded to this letter in a letter of his own dated April 29, 2002, "denying that he had intentionally provided false or incorrect information" on his SF-86 and "request[ing] an oral hearing" to defend against the accusations levied by Blake.  Id. ¶ 11.  Nevertheless, "[the plaintiff] was advised by . . . Blake that his employment had been terminated" in a letter dated May 3, 2002, without having received his requested hearing.  Id. ¶ 12.  The reason given

for the plaintiff's termination was that it was necessary "to promote the 'efficiency of the service.'"  Id.  The termination "was effective on May 8, 2002."  Id.

The plaintiff timely appealed his termination to the Merit Systems Protection Board (the "Board"), "claiming that the TSA's actions had been committed in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, [5 U.S.C. § 8432b, 38 U.S.C. §§ 4301-4304, 4311-4318, 4321-4326, 4331-4333 (2000) (the 'USERRA')]."  Compl. ¶ 13.  The administrative judge who presided over the plaintiff's appeal conducted a hearing on the merits of the appeal on March 2-3, 2004.  Kursar v. Dep't of Transp., Docket Number SE-315H-03-0187-1-2, 2004 MSPB LEXIS 1344, at *1 (Aug. 26, 2004).  Ultimately, the administrative judge denied the plaintiff's appeal.  Id.

The plaintiff filed a petition for review of the administrative judge's decision on October 27, 2004, arguing that he had discovered evidence "new and material" to his appeal.  Kursar v. Dep't of Transp., 157 Fed. Appx. 306, 309 (Fed. Cir. Dec. 12, 2005) (unpublished opinion) ("Kursar II").  After the Board summarily rejected his petition, the plaintiff appealed that determination to the United States Court of Appeals for the Federal Circuit.  Id.  He raised two arguments on appeal: (1) "that he was denied due process because he was terminated without an adequate opportunity to respond to Major Horn's allegations," id., and (2) that "the Board should have granted his petition for review" based on the supposedly "new and material evidence supporting [his] USERRA claim," id. at 310.

The Federal Circuit found the plaintiff's due process claim wanting.  It reasoned that "because [the plaintiff] was completing a probationary period in an excepted service position[,] . . . he . . . failed to show that he was denied procedural rights to which he was entitled."  Id. at 309.  However, the court was more receptive to the plaintiff's second argument,

concluding that the evidence produced by the plaintiff was "at least facially material" and "appear[ed] to be 'new.'" Id. at 311. It therefore "remand[ed] th[e] case to the Board for further proceedings addressed to [the plaintiff's] new and material evidence." Id.

Pursuant to the Federal Circuit's decision, the Board remanded the plaintiff's case to an administrative judge to "assess the credibility and probative value" of the plaintiff's newly discovered evidence "and determine whether it warrants a finding that the [p]laintiff's" rights under the USERRA were violated. Kursar v. Dep't of Transp., 102 M.S.P.R. 306, 311 (2006). The administrative judge, in turn, found as a factual matter that the newly discovered evidence produced by the plaintiff was not credible. Kursar v. Dep't of Homeland Sec., Docket Number SE-315H-03-0187-B-3, 2007 MSPB LEXIS 5966, at *12-21 (Sept. 28, 2007). The plaintiff appealed this determination, but to no avail. See Kursar v. Dep't of Homeland Sec., 108 M.S.P.R. 184, 184 (2008) (denying without comment the plaintiff's appeal from the administrative judge's ruling).

The plaintiff filed his complaint in this Court on November 6, 2007. In addition to challenging the equities of his termination, which he alleges was based on "false and inaccurate derogatory information" provided to Blake by Major Horn, Compl. ¶ 8, the plaintiff alleges that prospective employers have refused to hire him based on the circumstances surrounding his termination by the TSA. Id. ¶¶ 15-19. Specifically, the plaintiff alleges that "while he was pursuing his administrative rights through the [Board]," he "sought employment with a private civilian employer with whom he had worked for five years prior to his acceptance of the Federal Air Marshal[] position," only to be told that the employer "could not rehire him and risk [its] own reputation" because of his termination by the TSA. Id. ¶ 15. Another prospective employer allegedly "found [the plaintiff] unsuitable for employment" and rescinded its "conditional offer

of employment," id. ¶ 19, because "the TSA . . . intentionally disclosed inaccurate and defamatory information concerning [the plaintiff] to the background investigator [for the prospective employer;] namely[,] that [the plaintiff] had been terminated for submitting false or incorrect information on his SF[-]86," id. ¶ 18.

Based upon these allegations, the plaintiff raises seven claims for relief in his complaint. In Counts I and III of the complaint,[2] the plaintiff asserts that the TSA failed to provide him with the due process required by the United States Constitution and the APA before it terminated his employment, id. ¶¶ 20-26 (asserting lack of due process as a constitutional matter), which entitles the plaintiff to a name-clearing hearing, id. ¶¶ 34-45.  The plaintiff further asserts in Count II of his complaint that the TSA also violated the APA by "den[ying] him the full administrative rights that probationary federal employees in the employ of the TSA must be provided before their employment is terminated."  Id. ¶ 31.

Counts IV-VI of the plaintiff's complaint arise under the Privacy Act.  In Count IV, the plaintiff asserts that the TSA violated the Privacy Act by failing to collect information directly from the plaintiff or maintain accurate and complete records before terminating his employment, id. ¶¶ 46-58, whereas in Count V he asserts that the agency has violated the Act by failing to maintain accurate and complete records since his termination, id. ¶¶ 59-70, and in Count VI he asserts that the agency violated the Act through its dissemination of inaccurate information regarding the plaintiff's termination, id. ¶¶ 71-82.  Finally, the plaintiff asserts in Count VII of his complaint that the defendants have separately violated his due process rights by "intentionally interfer[ing] with [his] efforts to obtain employment in his chosen field of

---

[2]   The plaintiff refers to the various counts in his complaint as the "First Cause of Action," "Second Cause of Action," and so forth.  For ease of reference, the Court will refer to these counts by roman numeral throughout this memorandum opinion.

profession with private civilian employers." Id. ¶ 89.  He seeks declaratory and equitable relief, attorney's fees and costs, and a referral of those TSA officials responsible for violating the Privacy Act for prosecution pursuant to 5 U.S.C. § 552(a)(1).  Id. at 13-14.

The defendants filed their motion to dismiss on February 1, 2008.  In support of their motion, the defendants argue that the Court lacks subject-matter jurisdiction over the plaintiff's APA claims because the Civil Service Reform Act of 1978, 5 U.S.C. §§ 1201-1206, 2101a, 2301-2305, 3111-3112, 3131-3136, 3327, 3391-3397, 3591-3594, 3596, 4311-4315, 4507, 4701-4706, 5361-5366, 5381-5385, 5752, 7101-7106, 7111-7123, 7131-7135, 7211, 7501-7504, 7511-7514, 7521, 7541-7543, 7702-7703 (2000) (the "CSRA"), is the only remedy available to the plaintiff for adverse employment actions, and the plaintiff does not qualify for relief under that statute. Defs.' Mem. at 10-11.  The defendants further argue that the plaintiff's Privacy Act claims relating to the maintenance or dissemination of records since his termination must be dismissed for lack of subject-matter jurisdiction because the plaintiff failed to exhaust the Act's administrative remedies as to those claims.  Id. at 15.

Alternatively, the defendants argue that the plaintiff's Privacy Act claims regarding post-termination conduct by the agency fail to state a claim for which relief can be granted because the TSA could disseminate information about the plaintiff's termination under the "routine use" exemption of the Privacy Act and because the cause of the plaintiff's termination is a matter of public record. Id. at 16-17.  They further contend that the plaintiff's remaining Privacy Act claims should be dismissed because (1) by the plaintiff's own admission, the TSA collected written information from him directly once it received unsolicited information regarding the plaintiff's background, id. at 12-13, and (2) the records at issue here consist of subjective evaluations and opinions, which are not covered by the Privacy Act, id. at 13-15.  Finally, the

defendants assert that the plaintiff's due process claims, whether arising under either the Constitution or the APA, are barred by the preclusive effects of the Federal Circuit's ruling in Kursar II, id. at 6-8, and that the plaintiff had no liberty interest in his former position subject to the requirements of due process in any event, id. at 8-10.  They also argue that the plaintiff already had one opportunity to clear his name by both the TSA and the Board and failed to do so. Id. at 11-12.

The plaintiff contests each of these points in his opposition.  With respect to the defendants' jurisdictional arguments, he counters that the CSRA cannot preclude a court from reviewing a colorable constitutional claim, Pl.'s Opp'n at 12-14, and that the exhaustion requirements of the Privacy Act should be waived because the pursuit of such remedies would be futile, id. at 33-34.  He further argues that the doctrine of res judicata does not bar him from raising his due process arguments, id. at 10-12, that he has "protected liberty interests in relation to both his reputation and his future employment," id. at 14, and that neither the TSA nor the Board permitted him the opportunity to clear his name, id. at 22-23.  The plaintiff also defends the sufficiency of his various Privacy Act claims, asserting that (1) the TSA failed to consider the evidence that he submitted, and therefore failed to both properly and accurately collect it, id. at 25-26; (2) his challenge to the accuracy of the records used by the TSA to justify his termination concerns the factual allegations underlying the subjective evaluations of TSA personnel, not the evaluations themselves, id. at 27-31; and (3) the "routine use" exemption and "public record" defense raised by the defendants do not apply in this case, id. at 35-37.  The plaintiff also seeks discovery with respect to both his due process and Privacy Act claims.  Id. at 23-24, 37-38.[3]

---

[3]  The defendants did not file a reply memorandum in support of their motion to dismiss within eight days of the filing of the plaintiff's opposition as required by this Court's local rules.  See Local Civ. R. 7(d) ("Within five days after service of the memorandum in opposition the moving party may serve and file a reply memorandum."); see

(continued . . . )

## II. Standard of Review

As the Court noted above, the defendants seek dismissal pursuant to both Rule 12(b)(1)

and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The standards under which both

types of motion must be evaluated are the following.

A.      Motion to Dismiss under Rule 12(b)(1)

Broadly speaking, there are two types of Rule 12(b)(1) motions.  "A facial challenge

attacks the factual allegations of the complaint that are contained on the face of the complaint,

while a factual challenge is addressed to the underlying facts contained in the complaint." Al-

Owhali v. Ashcroft, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) (internal quotation and citations

omitted).  Where a defendant makes a facial challenge, "the [district] court must accept as true

the allegations in the complaint and consider the factual allegations of the complaint in the light

most favorable to the non-moving party," Erby v. United States, 424 F. Supp. 2d 180, 182

(D.D.C. 2006), just as it would on a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), see Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 93 (D.C. Cir.

2002)  (noting that the standard for facial challenge to subject-matter jurisdiction "is similar to

that of Rule 12(b)(6)").  On the other hand, where a factual challenge is made, a district court

"may consider materials outside the pleadings" to determine whether it has subject-matter

jurisdiction over the challenged case or claims, Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d

1249, 1253 (D.C. Cir. 2005), and "the plaintiff bears the burden of establishing the factual

predicates of jurisdiction by a preponderance of the evidence," Erby, 424 F. Supp. 2d at 182.

---

also Fed. R. Civ. P. 6(d) (adding three days whenever service of a filing is effected by mail).  On April 3, 2008—
nine days after the deadline for filing a reply memorandum had expired—the defendants filed a motion for an
extension of time in which to file their reply.  Motion to Extend Time at 1.  Because the defendants did not explain
why they failed this motion out of time, the Court denied it in a minute order entered on April 4, 2008.

B.      Motion to Dismiss under Rule 12(b)(6)

As with facial challenges to subject-matter jurisdiction under Rule 12(b)(1), the Court

"must treat the complaint's factual allegations as true and must grant [the] plaintiff the benefit of

all reasonable inferences from the facts alleged" in considering motions to dismiss under Rule

12(b)(6).  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotations omitted).

Unlike motions to dismiss under Rule 12(b)(1), factual challenges are not permitted under Rule

12(b)(6), and the Court may only consider the facts alleged in the complaint, any documents

attached as exhibits thereto, and matters subject to judicial notice in weighing the merits of the

motion.  EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997).  The

Court's focus is therefore restricted to the facts as alleged by the plaintiff, which must be

sufficiently detailed "to raise a right to relief above the speculative level."  Bell Atl. Corp. v.

Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007).

### III. Legal Analysis

Based upon the arguments set forth in the parties' memoranda of law, the issues before

the Court fall into roughly two categories: those that implicate the Court's subject-matter

jurisdiction, and those that do not.  Because "[j]urisdiction must be established before a federal

court may proceed to any other question," Galvan v. Fed. Prison Indus., Inc., 199 F.3d 461, 463

(D.C. Cir. 1999), the Court will begin its analysis with the question of subject-matter jurisdiction

before addressing the validity of the plaintiff's remaining claims.

A.      Subject-Matter Jurisdiction over the Plaintiff's APA and Privacy Act Claims

The defendants make two distinct arguments regarding the Court's subject-matter

jurisdiction.  First, they assert that the Court lacks subject-matter jurisdiction over the plaintiff's

APA claims because "[t]he CSRA is the exclusive remedy for adverse employment actions" and

the plaintiff cannot state a claim for which relief could be granted under this statute.  Defs.'

Mem. at 10.  Second, they argue that the Court should dismiss Counts V-VI of the plaintiff's

complaint because the plaintiff failed to exhaust the administrative remedies provided under the

Privacy Act.  Id. at 15.  The Court considers each of these arguments in turn.

1.      The APA claims

The APA "subject[s] to judicial review" any "final agency action for which there is no

other adequate remedy in a court."  5 U.S.C. § 704.  It "does not provide additional judicial

remedies in situations where the Congress has provided special and adequate review

procedures."  Bowen v. Massachusetts, 487 U.S. 879, 903 (1988) (internal quotation and citation

omitted).  Further, "the APA excludes from its waiver of sovereign immunity claims for which

an adequate remedy is available elsewhere" as well as "claims seeking relief expressly or

impliedly forbidden by another statute," Fornaro v. James, 416 F.3d 63, 66 (D.C. Cir. 2005), and

the APA as a whole does not apply "to the extent that [other] statutes preclude judicial review," 5

U.S.C. § 701(a)(1).  Thus, where "Congress has provided [a] plaintiff with statutory schemes and

remedies through which [the plaintiff] may seek relief, . . . [an] APA claim is properly

dismissed."  Mittleman v. U.S. Treasury, 773 F. Supp. 442, 449 (D.D.C. 1991).

One such remedial scheme is the CSRA.  In 1978, Congress "comprehensively

overhauled the civil service system, creating an elaborate new framework for evaluating adverse

personnel actions against federal employees."  United States v. Fausto, 484 U.S. 439, 443 (1988)

(internal quotation and citation omitted).  This "framework" is the CSRA, which "replace[d] a

haphazard patchwork of rules for civil servants with one integrated system for administrative and

judicial review of adverse personnel action."  McGregor v. Greer, 748 F. Supp. 881, 884 (D.D.C.

1990).  The statute is "designed to balance the legitimate interests of the various categories of

federal employees with the needs of sound and efficient administration." Fausto, 484 U.S. at 445.

In Fausto, the Supreme Court considered whether the absence of a remedy for a specific adverse employment action under the CSRA "was meant to preclude judicial review for those employees" lacking such remedies, "or rather merely [was intended] to leave them free to pursue the remedies that had been available before enactment of the CSRA." Id. at 443-44. In that case, "Joseph A. Fausto, an employee of the Department of the Interior Fish and Wildlife Service [(the 'Service')], was suspended from his job for 30 days because of [his] unauthorized use of a [g]overnment vehicle," id. at 440, and was "advised" by the Service "that it intended to dismiss him for a number of reasons," including his unauthorized use of the vehicle, id. at 441. When Fausto's appeal to the Board was dismissed on the grounds that "nonpreference eligible" employees "in the excepted service" category of employment like Fausto "ha[d] no right to appeal to the [Board]," id. at 442, Fausto filed suit in the Claims Court under the Back Pay Act of 1966, 5 U.S.C. § 5596 (2000) [(the "Back Pay Act")], id. at 443. "The Claims Court dismissed, holding that the CSRA comprised the exhaustive catalog of remedies for civil servants affected by adverse personnel action," but "[t]he Federal Circuit reversed and remanded," concluding that "the CSRA . . . did not preclude [nonpreference excepted service employees] from seeking the Claims Court review traditionally available under [28 U.S.C. § 1491] based on the Back Pay Act," and that "Fausto's suspension [was] wrongful." Id.

The Supreme Court disagreed with the Federal Circuit's ruling. "[E]xamining the purpose of the CSRA, the entirety of its text, and the structure of review that it establishes," id. at 444, the Court concluded that the statute "display[ed] a clear congressional intent to deny the excluded employees the protections of Chapter 75 [of the CSRA]—including judicial review—

for personnel action covered by that chapter," id. at 447.  The Court reached this conclusion "not

only from the statutory language, but also from . . . the structure of the statutory scheme."  Id. at

449.

Numerous courts have interpreted Fausto as "stand[ing] for the general proposition that

judicial review is unavailable to a federal employee who has suffered an adverse personnel

action if [the] CSRA does not provide judicial review."  Pathak v. Dep't of Veterans Affairs, 274

F.3d 28, 31 (1st Cir. 2001); see also, e.g., Mann v. Haigh, 120 F.3d 34, 38 (4th Cir. 1997)

(holding that "in view of the comprehensiveness of the CSRA," the statute "prevents

[government] employees from obtaining judicial review of an adverse employment decision

under the APA"); McAuliffe v. Rice, 966 F.2d 979, 981 (5th Cir. 1992) ("the exclusivity of the

CSRA precludes application of APA judicial review of [a government employee's]

termination").  Among those courts is the District of Columbia Circuit, which held in Graham v.

Ashcroft, 358 F.3d 931 (D.C. Cir. 2004), that the "explicit assumption in Fausto that employees

with judicial review rights under the CSRA may not obtain judicial review of personnel actions

outside the bounds of the CSRA" applies to even "minor . . . personnel actions."  Id. at 934-35.

Similarly, other members of this Court have repeatedly held that the CSRA "is the exclusive

remedy" for government employees who have suffered adverse personnel actions, "even if it

affords incomplete relief."  Hall v. Clinton, 143 F. Supp. 2d 1, 5 (D.D.C. 2001); see also Roberts

v. U.S. Dep't of Justice, 366 F. Supp. 2d 13, 21 (D.D.C. 2005) ("That Congress deliberately

excluded [certain] employees from the provisions establishing administrative and judicial review

for personnel actions involving violations of the CSRA implementing regulations suggests that

Congress meant to preclude judicial review for such actions." (emphasis in original)); McGregor,

748 F. Supp. at 884 ("[T]he CSRA defines [a] plaintiff's exclusive rights as a public employee,

regardless of [the plaintiff's] lack of remedies.").  Thus, it is beyond peradventure that the

plaintiff's statutory rights regarding his termination from the TSA, if any he possesses, arise

exclusively under the CSRA.

The Federal Circuit has already determined that the plaintiff cannot seek relief under the

CSRA because he is not an "employee" within the meaning of the statute.  Kursar II, 157 Fed.

Appx. at 309-10.  The plaintiff does not challenge the propriety of that ruling (and could not do

so in this Court), nor does he dispute that the CSRA precludes any claims under the APA relating

to his termination.  He argues only that the CSRA does not "preclude[] [him] from raising a

colorable constitutional claim."  Pl.'s Opp'n at 14 (emphasis added); see also Hubbard v. EPA,

809 F.2d 1, 11-12 (D.C. Cir. 1986) (permitting applicant for government position to raise

constitutional claim for injunctive relief notwithstanding lack of remedies under the CSRA).  But

the plaintiff's constitutional claims are not at issue insofar as the defendants' exclusivity

argument is concerned.  The sole issue is whether the plaintiff can seek relief under the APA that

is unavailable to him under the CSRA, and the overwhelming precedent in this Circuit and

elsewhere makes clear that he cannot.  The Court will therefore dismiss the plaintiff's APA

claims for lack of subject-matter jurisdiction.

2.      The Privacy Act claims

In addition to the plaintiff's APA claims, the defendants seek to dismiss those Privacy

Act claims asserted by the plaintiff seeking amendment of the TSA's personnel records under 5

U.S.C. § 552a(g)(1)(A) (Counts V-VI of the plaintiff's complaint),[4] on the theory that the

---

[4]  The plaintiff does not explicitly state that Counts V-VI of his complaint arise under § 552a(g)(1)(A), but that is the
only basis under which these claims could arise.  In Count V, the plaintiff alleges that the defendants "failed to
maintain [his] records" in an accurate and complete manner in violation of 5 U.S.C. § 552a(e)(5).  Compl. ¶ 66.  In
Count VI, the plaintiff alleges that the defendants violated § 552a(e)(6) by "disseminat[ing] inaccurate information
from [his] Privacy Act System of Records to at least one private civilian employer."  Id. ¶ 79.  Both § 552a(e)(5) and
§ 552a(e)(6) relate to an agency's use of records outside the context of an adverse action against the subject of the

(continued . . . )

plaintiff has failed to exhaust the administrative remedies afforded to him under § 552a(d).

Defs.' Mem. at 15.  Further, the defendants seek to dismiss the plaintiff's claim under

§ 552a(g)(1)(C) (Count IV of the plaintiff's complaint) because that claim is, according to the

defendants, nothing more than "a collateral attack on the decision made by the [TSA] to

terminate [the plaintiff's] employment," id. at 14, which would presumably run afoul of the

exclusive remedial scheme set forth in the CSRA, see supra part II.A.1; see also Kleiman v.

Dep't of Energy, 956 F.2d 335, 338 (D.C. Cir. 1992) (refusing to "grant[] litigants, under the

aegis of the Privacy Act or otherwise, district court review of personnel decisions judicially

unreviewable under the CSRA").  The Court agrees with the defendants that all of the plaintiff's

Privacy Act claims must be dismissed for lack of subject-matter jurisdiction, albeit for a different

reason with respect to the latter challenge.

First, the Court concurs with the defendants that the plaintiff's failure to exhaust the

administrative remedies provided by § 552a(d) forecloses any relief under § 552a(g)(1)(A).

Section 552a(g)(1)(A) permits an individual to bring a civil action against an agency

"[w]henever an agency . . . makes a determination under [§ 552a(d)(3)] not to amend an

individual's record in accordance with his request, or fails to make such review in conformity

with that subsection."  Section 552a(d), in turn, provides in pertinent part:

> (d)  Access to records.—Each agency that maintains a system of
> records shall—
> . . .
>
> > (3) permit the individual who disagrees with the refusal of
> > the agency to amend his record to request a review of such

---

records, see id. § 552a(e)(5) (requiring an agency to "maintain all records which are used by the agency in making any determination about any individual" (emphasis added)); id. § 552a(e)(6) (requiring an agency to ensure the accuracy, completeness, timeliness, and relevancy of any records "about an individual" before "disseminating [such] record[s] . . . to any person other than an agency"); thus, a violation of these provisions could only give rise to relief under § 552a(g)(1)(A), see infra discussion; see also Doe v. Chao, 540 U.S. 614, 618 (2004) ("subsection (g)(1)(A) provides for the correction of any inaccurate or otherwise improper material in a record").

> refusal, and not later than 30 days . . . from the date on
> which the individual requests such review, complete such
> review and make a final determination . . . ; and if, after his
> review, the reviewing official also refuses to amend the
> record in accordance with the request, permit the individual
> to file with the agency a concise statement setting forth the
> reasons for his disagreement with the refusal of the agency,
> and notify the individual of the provisions for judicial
> review of the reviewing official's determination under [5
> U.S.C. § 552a(g)(1)(A)].

5 U.S.C. § 552a(d)(3).  The plaintiff does not dispute that he failed to pursue the remedies

delineated in § 552a(d)(3), but argues instead that he should not be required to exhaust those

remedies because pursuit of such remedies would be futile.  Pl.'s Opp'n at 33-34.

"The word 'exhaustion' now describes two distinct legal concepts."  Avocados Plus Inc.

v. Veneman, 370 F.3d 1243, 1247 (D.C. Cir. 2004).  The first "is a judicially created doctrine

requiring parties who seek to challenge agency action to exhaust available administrative

remedies before bringing their case to court," whereas "[t]he second form of exhaustion arises

when Congress requires resort to the administrative process as a predicate to judicial review."

Id.  Only the latter concept is jurisdictional in nature.  See id. (explaining that so-called

"jurisdictional exhaustion" is "rooted . . . in Congress' power to control the jurisdiction of the

federal courts").  Moreover, a district court must "presume [that] exhaustion is non-jurisdictional

unless Congress states in clear, unequivocal terms that the judiciary is barred from hearing an

action until the administrative agency has come to a decision."  Id. at 1248 (internal quotation

and citation omitted).

In this case, the statute at issue "states in clear, unequivocal terms" that its administrative

remedies are a jurisdictional prerequisite to a district court's review.  Section 552a(g)(1)(A)

"provides a civil remedy only where an agency" makes the kind of determination contemplated

in § 552a(d)(3), McCready v. Nicholson, 465 F.3d 1, 14 (D.C. Cir. 2006) (emphasis added),

which means that the "explicit steps" required by subsection (d) prior to the agency's review

"<u>must</u> be taken before a party may file for injunctive relief in [a] district court pursuant to

[§ 552a](g)(1)(A)," <u>Dickson v. Office of Personnel Mgmt.</u>, 828 F.2d 32, 40 (D.C. Cir. 1987)

(emphasis added); <u>see also</u> <u>Haase v. Sessions</u>, 893 F.2d 370, 373 (D.C. Cir. 1990) (interpreting

§ 552a(g)(1)(A) to require a plaintiff to "initially seek an amendment or access from the

[pertinent] agency and even seek review within the agency before coming to court").

Consequently, "[p]remature Privacy Act suits are dismissed for lack of subject[-]matter

jurisdiction," not under the judicial exhaustion doctrine.  <u>Mulhern v. Gates</u>, 525 F. Supp. 2d 174,

183 (D.D.C. 2007).

Because "[i]n a Privacy Act case, exhaustion is an express statutory prerequisite to the

exercise of jurisdiction by a federal court," <u>Murphy v. United States</u>, 121 F. Supp. 2d 21, 28

(D.D.C. 2000), the Court cannot excuse the requirement on the basis of futility, <u>see</u> <u>Arbaugh v.</u>

<u>Y&H Corp.</u>, 546 U.S. 500, 514 (2006) ("[S]ubject-matter jurisdiction, because it involves the

court's power to hear a case, can never be forfeited or waived." (internal quotation and citation

omitted)).  Like all prerequisites for subject-matter jurisdiction, the requirement "is inflexible

and without exception." <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 95 (1998) (internal

quotation and citation omitted).  The Court will therefore dismiss without prejudice Counts V-VI

of the plaintiff's complaint for lack of subject-matter jurisdiction.

The Court also agrees with the defendants that it must dismiss Count IV, in which the

plaintiff seeks relief pursuant to 5 U.S.C. § 552a(g)(1)(C), for lack of subject-matter jurisdiction.

That subsection provides a civil remedy to a plaintiff when an agency

> fails to maintain any record concerning any individual with such
> accuracy, relevance, timeliness, and completeness as is necessary
> to assure fairness in any determination relating to the
> qualifications, character, rights, or opportunities of, benefits to the

> individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual[.]

Id.

"Subsection (g)(1)(C) describes an agency's failure to maintain an adequate record on an individual, when the result is a determination 'adverse' to that person." Doe v. Chao, 540 U.S. 614, 619 (2004). "Thus, to bring a claim under § 552a(g)(1)(C)," a plaintiff "need not address how agencies maintain their systems of records," but rather must demonstrate:

> (1) [that the plaintiff] has been aggrieved by an adverse determination; (2) [that] the agency failed to maintain [the plaintiff's] records with the degree of accuracy necessary to assure fairness in the determination; [and] (3) [that] the agency's reliance on the inaccurate records was the proximate cause of the adverse determination.

McCready, 465 F.3d at 10 (internal quotation and citation omitted) (emphasis removed). Where the agency "acted in a manner which was intentional or willful," § 552a(g)(4) provides that "the United States shall be liable" for "actual damages sustained by the individual," and guarantees that individuals who demonstrate such damages will recover at least $1,000. Id. § 552a(g)(4)(A).

Contrary to the defendants' suppositions, the plaintiff cannot invoke § 552a(g)(1)(C) as a means to reverse his termination by the TSA. To accomplish that feat, the plaintiff would require injunctive relief from the Court, and the Privacy Act "authorizes entry of injunctive relief in only two specific situations": (1) when an individual succeeds in a suit for amendment of the individual's records pursuant to § 552a(g)(1)(A), and (2) when an individual succeeds in a suit for disclosure of agency records pursuant to § 552a(g)(1)(B). Doe v. Stephens, 851 F.2d 1457, 1463 (D.C. Cir. 1988). "In so doing, . . . the Act precludes other forms of declaratory and injunctive relief," including such relief for suits under § 552a(g)(1)(C). Id.; see also Risley v. Hawk, 108 F.3d 1396, 1397 (D.C. Cir. 1997) ("injunctive relief is not available under

[§ 552a(g)(1)(C)]"); cf. Chao, 540 U.S. at 635 (Ginsburg, J., dissenting on other grounds) ("It bears emphasis that the Privacy Act does not authorize injunctive relief when suit is maintained under § 552a(g)(1)(C) . . . ."). Thus, there is no possibility that the plaintiff could achieve through § 552a(g)(1)(C) the relief denied him under the CSRA, and correspondingly no chance that the Court would lack subject-matter jurisdiction due to the exclusivity of the latter statute's application.

Nevertheless, the Court must dismiss Count IV of the plaintiff's complaint for lack of subject-matter jurisdiction because the plaintiff does not request damages in his complaint. See Compl. at 13-14 (delineating the relief requested by the plaintiff). As that is the only relief available to the plaintiff under § 552a(g)(1)(C), his claim under that statute must be dismissed for lack of standing. See Utah v. Evans, 536 U.S. 452, 459 (2002) (holding that "[a] lawsuit does not fall within" a court's "grant of judicial authority unless, among other things, [the] court[] ha[s] the power to redress the injury that the defendant allegedly caused the plaintiff" (internal quotation and citation omitted)). The Court will therefore dismiss Count IV of the plaintiff's complaint without prejudice.[5]

B.    Failure to State a Claim under the Fifth Amendment

Having disposed of the plaintiff's APA and Privacy Act claims on jurisdictional grounds, the Court's final task is to determine whether the plaintiff has stated a claim for which relief can be granted under the Due Process Clause of the Fifth Amendment. See Compl. ¶¶ 20-26, 34-45, 83-91 (alleging violations of the plaintiff's due process rights). In Count I of his complaint, the plaintiff asserts due process violations arising from his termination by the TSA, id. ¶¶ 20-26,

---

[5]   The plaintiff is, of course, free to seek leave from the Court to file an amended complaint requesting damages under § 552a(g)(1)(C). See Fed. R. Civ. P. 15(a) (setting forth the procedures governing amendment to a complaint before trial); Local Civ. R. 15.1 (setting forth the procedures governing amendment to a complaint specific to this Court). The Court will consider the merits of such a motion if and when it is filed.

whereas in Count VII of his complaint the plaintiff asserts that the defendants have interfered

with his employment prospects by disseminating "inaccurate and false information" to any

prospective employers who perform a background check on the plaintiff, id. ¶ 91.  The

defendants contend that any due process claims arising from the plaintiff's termination were

adjudicated by the Federal Circuit in Kursar II, Defs.' Mem. at 6-8, and that the plaintiff had no

property interest in his probationary position for purposes of the Fifth Amendment in any event,

id. at 8-10.

   The Court need not consider whether the plaintiff had a property interest in his position

as a Federal Air Marshal for purposes of the Fifth Amendment because his due process claim is

plainly barred by the res judicata effect of the Federal Circuit's decision in Kursar II.  The

doctrine of res judicata, also known as claim preclusion, precludes a plaintiff from raising

specific claims "if there has been prior litigation (1) involving the same claims or cause of

action[] (2) between the same parties or their privies[] and (3) there has been a final valid

judgment on the merits[] (4) by a court of competent jurisdiction."  Natural Res. Def. Council v.

EPA, 513 F.3d 257, 260 (D.C. Cir. 2008) (internal quotation and citation omitted).  Further, "res

judicata bars relitigation not only of matters determined in a previous litigation[,] but also ones

that a party could have raised."  Appalachian Power Co. v. EPA, 251 F.3d 1026, 1033-34 (D.C.

Cir. 2001) (internal quotation and citation omitted) (emphasis in original).

   In its decision resolving the plaintiff's appeal from the Board's rejection of his

termination appeal, the Federal Circuit explicitly held that "[a]s as a probationary employee,

[the plaintiff] lacked a property interest in his position that entitled him to procedural protections

under the Fifth Amendment's Due Process Clause."  Kursar II, 157 Fed. Appx. at 310 n.1.  This

determination was necessary for the court to reject the plaintiff's argument "that he was denied

due process because he was terminated without an adequate opportunity to respond to Major

Horn's allegations."  Id. at 309.  The plaintiff's contention that the Federal Circuit "solely

addressed whether the [Board] had jurisdiction to consider [his] claim that he had been deprived

of his due process rights pursuant to the [CSRA]," Pl.'s Opp'n at 11, is simply not an accurate

representation of the record.  Indeed, it is difficult for the Court to imagine a more direct

refutation of the due process claim advanced by the plaintiff in this Court with respect to his

termination.

Because the plaintiff is precluded by the res judicata effect of the Federal Circuit's

decision in Kursar II from raising a due process claim relating to his termination from the TSA,

the Court will dismiss Count I of the plaintiff's complaint with prejudice.  However, the Court

will not dismiss Counts III and VII of the complaint because neither of these counts is implicated

by the defendants' res judicata or constitutional arguments.  The defendants' arguments focus

solely on the plaintiff's constitutional rights vis-à-vis his termination, see Defs.' Mem. at 6-8

(arguing that the Federal Circuit rejected the plaintiff's due process argument "because

[the p]laintiff was not an employee who was entitled to the due process protections of the Fifth

Amendment"); id. at 8-10 (arguing that "[a]n individual has no due process rights in the

termination of his probationary federal employment"), whereas Count VII concerns the

plaintiff's constitutional rights with respect to his reputation and future employment prospects,

see Compl. ¶¶ 89, 91 (alleging that "one or more of the individual defendants[] has intentionally

interfered with [the plaintiff's] efforts to obtain employment in his chosen field," and that "the

TSA has effectively stigmatized [his] reputation," thereby "implicat[ing] [his] liberty interests").

The merits of this latter claim were never adjudicated by the Federal Circuit and are not

addressed by the defendants in their motion to dismiss.

As for the plaintiff's request for a name-clearing hearing in Count III of his complaint, that request is not, as the defendants correctly point out, a cause of action, but rather is "a remedy available under a Fifth Amendment claim for damage to reputation without due process of law." Defs.' Mem. at 11.  Accordingly, it remains a possible remedy so long as Count VII remains a viable cause of action.  And while it could be argued that the plaintiff should have incorporated his request for a name-clearing hearing in Count VII because it is not a separate claim per se, the Court sees little utility in formally dismissing Count III based on this technicality, particularly given that the plaintiff, who is representing himself in this suit, might confuse such a result with a denial of his name-clearing request on its merits.  The Court will therefore dismiss Count I of the plaintiff's complaint with prejudice on res judicata grounds, but not Counts III and VII.

### IV. Conclusion

The Court's ruling today is hardly the final word with respect to the merits of the plaintiff's suit.  The plaintiff's Privacy Act claim under § 552a(g)(1)(C) may yet be revived if he obtains leave to file an amended complaint seeking damages under that statutory provision, and his due process claims relating to his allegedly damaged job prospects and reputation have not yet been tested.  Tempting as it may be to simply adjudicate these issues on their merits and resolve this case at least with respect to the question of whether the plaintiff has stated a claim for which relief can be granted, the Court cannot "act as an advocate for the parties and construct legal arguments on their behalf."  Smith v. United States, 518 F. Supp. 2d 139, 143 n.3 (D.D.C. 2007) (Walton, J.).  The Court will therefore dismiss the plaintiff's APA and Privacy Act claims for lack of subject-matter jurisdiction and dismiss the plaintiff's due process claim regarding his termination from the TSA due to the preclusive effects of the Federal Circuit's ruling on that

issue, and defer adjudication of the merits of the plaintiff's § 552a(g)(1)(C) and remaining due

process claim until these issues are squarely before it.

**SO ORDERED** this 6th day of October, 2008.[6]

REGGIE B. WALTON
United States District Judge

---

[6] This memorandum opinion relates to an order previously entered by the Court (1) granting in part the defendants' motion to dismiss, (2) dismissing without prejudice Count I of the plaintiff's complaint insofar as the plaintiff seeks relief under the APA and with prejudice insofar as the plaintiff seeks relief under the Due Process Clause of the Fifth Amendment, (3) dismissing without prejudice Counts II-VI of the plaintiff's complaint, and (4) directing the defendants to file their answer to the plaintiff's complaint within twenty days of the entry of this order.