# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ROBERT KURSAR,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )          Civil Action No. 07-2001 (RBW)
                                        )
TRANSPORTATION SECURITY                 )
ADMINISTRATION, <u>et al.</u>,          )
                                        )
            Defendants.                 )
_____)

## MEMORANDUM OPINION

Robert Kursar, the plaintiff in this civil case, seeks declaratory and injunctive relief, monetary damages, and the referral of certain individuals for criminal prosecution for various alleged violations of the Federal Privacy Act, 5 U.S.C. § 552a(g)(1) (2006), and the Fifth Amendment of the United States Constitution, that he contends were committed by the Transportation Security Administration ("TSA"), TSA Special Agent in Charge William Blake, Jr., and other unknown TSA officials, First Amended Complaint ("Am. Compl.") ¶¶ 1-6. Currently before the Court is the defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and for summary judgment pursuant to Federal Rule of Civil Procedure 56, as well as Kursar's cross-motion for summary judgment. Upon consideration of Kursar's amended complaint, the defendants' motion to dismiss or for judgment, Kursar's cross-motion for summary judgment, and all relevant documents and exhibits attached to those submissions,[1]

_____
[1] In addition to Kursar's First Amended Complaint ("Am. Compl."), the defendants' motion to dismiss, for judgment on the pleadings, or for summary judgment, and Kursar's cross-motion for summary judgment, the Court
(continued . . .)

the Court concludes for the reasons below that it must grant the TSA's motion to dismiss Count Two of the amended complaint, deny the TSA's motion to dismiss the remaining counts of the amended complaint but grant the TSA's motion for summary judgment as to these counts, and deny Kursar's cross-motion for summary judgment.

## I.     Background[2]

Kursar "is a dual [United States] and Canadian citizen," Am. Compl. ¶ 3, who, in 1994, was enlisted in the Washington State Army National Guard ("Washington National Guard") as a warrant officer while also employed at the Whatcom County Sheriff's Office in the state of Washington, Plaintiff's Statement of Material Facts As to Which There is No Genuine Issue ("Pl.'s Stmt. of Facts") ¶ 1. "In or about October 1995," the Whatcom County Sheriff's Office conducted "an internal investigation into [his] use of military leave and [his] admittedly ill-advised decision to use [his] law enforcement credentials in order to gain access to a scuba-diving course." Pl.'s Opp'n, Ex. 4 (Declaration of Robert Kursar ("Kursar Decl.")) ¶ 5. As a result of the investigation, the Whatcom County Sheriff's Office terminated Kursar's employment in January 1996. Id. ¶ 6. At the time of the investigation, Kursar "voluntarily" submitted his resignation to the Washington National Guard at the request of his supervisor. Id.

---

(. . . continued)
considered the following documents in reaching its decision: (1) the plaintiff's initial Complaint ("Compl."); (2) the Defendants' Memorandum in Support of TSA's Motion to Dismiss, for Judgment on the Pleadings or, in the Alternative, for Summary Judgment ("Defs.' Mem."); (3) the Plaintiff's Opposition to Defendants' Motion to Dismiss, for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Opp'n"); (4) Defendant Transportation Security Administration's Reply in Further Support of its Motion to Dismiss and/or for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Defs.' Reply"); and (5) the Reply in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply").

[2] In setting forth the factual background, the Court relies on both facts contained in the amended complaint, as well as facts derived from sources outside of the complaint. Consistent with the standards of review for the various motions that are now before the Court, see infra pp. 10-12, the Court, in deciding whether to grant the defendants' motions under Rules 12(b)(6) and 12(c), will not consider any facts that are asserted outside of the complaint, unless those facts are of the kind that the Court may take judicial notice.

¶ 7.  Kursar's supervisor informed him that the Washington National Guard was considering whether to also conduct an internal investigation into his "fraudulent" use of his "law enforcement credentials," and whether such behavior warranted an adverse discharge.  Pl's Stmt. of Facts ¶ 2; Pl.'s Opp'n, Ex. 4 (Kursar Decl.) ¶ 7.  In July 1996, the Washington National Guard completed its investigation, which led to Kursar being offered the option of proceeding with his resignation and receiving a general discharge under honorable conditions, or appearing before "a Board of Inquiry" for "an elimination proceeding."  Pl.'s Opp'n, Ex. 4 (Kursar Decl.) ¶ 7; Pl.'s Stmt. of Facts ¶ 3.  Kursar "decided to accept the offer" of proceeding with his resignation.  Pl.'s Opp'n, Ex. 4 (Kursar Decl.) ¶ 7.

On January 23, 1997, Kursar enlisted in the United States Army Reserve.  Id. ¶ 9. Several months later, the Army Central Clearance Facility "temporarily suspended" Kursar's security clearance when it discovered that he had been terminated from his earlier position with the Whatcom County Sheriff's Office.[3]  Pl.'s Stmt. of Facts ¶ 8.  Kursar alleges that the Army ultimately discontinued its investigation of the incident.  Id. ¶ 9.

In April 2002, Kursar was "selected for an excepted service position" with the TSA as a federal air marshal, subject to a one-year probation period.  Am. Compl. ¶ 7.  Shortly after he began working at the TSA, his supervisor, former Special Agent in Charge William Blake, Jr., spoke with Major Wellington Hom, who had served with Kursar in the Army.  Id. ¶ 8.  The day after this conversation occurred, Blake provided Kursar with notice of his termination "for submitting false or incorrect information on his employment application and Standard Form 86

---

[3] The defendant disputes that the suspension was temporary.  Defs.' Reply to Pl.'s Stmt. of Facts ¶ 8.

('SF[-]86')."[4]  Id. ¶ 10.  Specifically, the notice explained that "in response to question 22" on his SF-86, Kursar "failed to state that [he was] terminated from the Washington State Army/Air National Guard in June 1996," and that "in response to question 26, [he] falsely stated that [he] did not have a security clearance revoked or suspended."  Def.'s Mem., Ex. D (April 25, 2002 Letter from William Blake to Robert Kursar) at 1.  Although Kursar submitted a written denial to the claims and objected to the amount of time given to appeal the decision, the TSA terminated his employment by letter on May 3, 2002 and denied his request for an oral hearing.  Am. Compl. ¶ 11-12.  In the termination letter, Blake represented that while he "carefully considered [Kursar's] written response to the charges," he concluded that "the facts support the proposed action," and that "it will promote the efficiency of the service to terminate [him] from government employment."  Def.'s Mem., Ex. G (May 3, 2002 Letter from William Blake to Robert Kursar) at 1.  Kursar contends that he subsequently lost job opportunities with private employers due to the circulation of information regarding his termination from the TSA.  Am. Compl. ¶¶ 15-16.

Seeking redress, Kursar challenged his termination with the Merit Systems Protection Board ("MSPB") in March of 2003, alleging that the TSA violated the Uniformed Services Employment and Reemployment Rights Act of 1994 ("Employment Rights Act").  Id. ¶ 13. However, an administrative law judge concluded that he was not entitled to relief, and the MSPB and Federal Circuit ultimately affirmed.  See Kursar v. Dep't of Homeland Sec., 301 Fed. App'x 992, 992 (Fed. Cir. 2008).

---

[4] Standard Form 86 is the United States Government's Questionnaire for National Security Positions.  United States Office of Personnel Management Questionnaire for National Security Positions (2008), http://www.opm.gov/forms/pdf_fill/sf86.pdf.

Kursar then filed his initial complaint in this matter on November 6, 2007. Proceeding pro se, Kursar alleged in Counts One and Two of his complaint that the TSA violated his rights under the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act ("APA"), 5 U.S.C. § 552 (2006), when it terminated his employment, Compl. ¶¶ 20-26, ¶ 31. In Count Three of the complaint, Kursar requested a "[n]ame-[c]learing [h]earing" to vindicate the TSA's alleged violation of his due process rights. Id. ¶¶ 34-45. Kursar further alleged in Counts Four through Six that the TSA violated the Privacy Act by failing to collect information directly from him and maintain accurate and complete records before terminating his employment, id. ¶¶ 46-58, by failing to maintain accurate and complete records following his termination, id. ¶¶ 59-70; and by disseminating inaccurate information regarding his termination, id. ¶¶ 71-82.

Unbeknownst to the undersigned member of the Court, Kursar filed a second complaint in this Court on the same date as his initial complaint in this matter. That matter was assigned to Judge Emmet G. Sullivan of this Court, but unlike the complaint filed in this case, Kursar's second complaint was filed by counsel, and he proceeded in that action under the name "Alexander Kursar" rather than "Robert Kursar." Complaint, Kursar v. Dep't of the Army, No. 07-2005 (EGS) at 1 (D.D.C. filed Nov. 6, 2007) ("Kursar I"). In his second complaint, Kursar alleged various Privacy Act violations against the Department of the Army, including the intentional disclosure and release of confidential records without making reasonable efforts to assure accuracy, failure to establish and implement rules of conduct for persons involved in the records system, and failure to establish appropriate safeguards to ensure the confidentiality of records pertaining to him. Id. ¶¶ 34-36. Specifically, he alleged that the Army, without authorization, disseminated his records to a party whom he was testifying against in a bankruptcy proceeding, as well as to his former insurance company, and to a private civilian employer who

was conducting a background investigation in the course of considering him for employment.  Id. ¶¶ 20, 22, 23, 24, 27.  Among the numerous documents at issue was information related to "his resignation from the [Washington National Guard] and reports of unfavorable information regarding his security clearance."  Id. ¶ 20.

In November 2008, Kursar reached a settlement agreement with the Army in the second matter and received $90,000 in exchange for "full settlement and satisfaction of any and all claims" that he "may have or hereafter acquire against the United States, its agents, servants, and employees on account of the same subject matter that gave rise to the above-captioned action." Stipulation for Compromise Settlement and Release of Privacy Act Claim, Kursar v. Dep't of the Army, No. 07-2005 (EGS), ¶ 4 (D.D.C. filed Nov. 6, 2007).  Through this settlement agreement, all claims, "whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise" to the initial suit were settled.  Id. ¶ 1.  The settlement agreement was approved by Judge Sullivan on November 19, 2008.  Id. at 5.

Subsequently, the undersigned member of the Court issued a memorandum opinion and order in the present case, in which Kursar's claims under the APA were dismissed for lack of subject-matter jurisdiction and his termination-related due process claim was dismissed based on res judicata.  Kursar v. Transp. Sec. Admin., 581 F. Supp. 2d 7, 16, 20-21 (D.D.C. 2008) ("Kursar II").  Specifically, the Court concluded that judicial remedies under the APA are not available where "Congress has provided [a] plaintiff with statutory schemes and remedies through which [the plaintiff] may seek relief," id. at 15 (quoting Mittleman v. U.S. Treasury, 773 F. Supp. 442, 449 (D.D.C. 1991) (Harris, J.)), and because Kursar had available to him relief under the Civil Service Reform Act of 1978, 5 U.S.C. §§ 1201-1206 (2000) (the "CSRA"), to redress his claim that he suffered an adverse personnel action, the Court dismissed his APA

claims, id. at 16.  The Court further held that Kursar's due process claim was precluded on res judicata grounds because "[i]n its decision resolving [his] appeal from the Board's rejection of his termination appeal, the Federal Circuit explicitly held that '[a]s a probationary employee, [Kursar] lacked a property interest in his position that entitled him to procedural protections under the Fifth Amendment's Due Process Clause.'"  Id. at 20.  And, in rejecting Kursar's Privacy Act claims, the Court first explained that his allegations regarding the TSA's "fail[ure] to maintain [his] records in an accurate and complete manner in violation of [Section] 552a(e)(5)," as well as his claim that the "defendants violated [Section] 552a(e)(6) by disseminating inaccurate information from his Privacy Act System of Records to at least one private civilian employer," id. at 17 n.4 (internal quotation marks and brackets omitted), could only be brought under Section 552a(g)(1)(A), id.  The Court went on to conclude that Kursar was required to exhaust all administrative remedies for any claims under Section 552a(g)(1)(A), and for that reason the Court was compelled to dismiss these two claims for lack of subject-matter jurisdiction.  Id. at 18.  As for Kursar's third Privacy Act claim under Section 552a(g)(1)(C), the Court dismissed that claim for lack of subject-matter jurisdiction because he did "not request damages in his complaint," and because the Court lacked authorization to grant equitable relief under that section, Kursar lacked standing to bring that claim.[5]  Id. at 19.  Finally, the Court

---

[5] Upon further reflection, the Court's dismissal for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) was in error.  Dismissal for want of subject-matter jurisdiction is appropriate only where the Court lacks the "statutory or constitutional power to adjudicate [a] case," Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998), which is distinguishable from a dismissal for failure to state a claim upon which relief can be granted, which constitutes "a ruling on the merits with res judicata effect," Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987).  Indeed, the Court has jurisdiction where "the right of the [plaintiff] to recover under [his] complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another."  Steel Co., 523 U.S. at 89 (quoting Bell v. Hood, 327 U.S. 678, 685 (1946)). And here, Kursar's inability to obtain injunctive relief under the Privacy Act is a result of the District of Columbia Circuit's construction of the Privacy Act.  See Hastings v. Judicial Conference, 770 F.2d 1093, 1104 (D.C. Cir. 1985) (concluding that equitable relief is not available under the Privacy Act because "such relief [is] not . . . among those expressly made available to remedy past disclosures"); Parks v. Internal Revenue Serv., 618 F.2d 677, 684 (10th Cir. 1980) (observing that because the Privacy Act expressly authorizes injunctive relief "in only two

(continued . . .)

declined to dismiss the plaintiff's name-clearing hearing and Fifth Amendment claims, concluding that because a name-clearing hearing was a remedy request and not a cause of action, it remained a possible remedy available to the plaintiff so long as his Fifth Amendment liberty interest claim remained a "viable cause of action." Id. at 21.

After exhausting his administrative remedies concerning the TSA's alleged Privacy Act violations,[6] Kursar, now represented by counsel, filed an amended complaint in the present case on March 16, 2009. Specifically, he alleges in Count One that he "has a legal right under the Privacy Act to have his records amended as detailed in his request and appeal, and that the TSA violated [Section] 552a(g)(1)(A) by failing to comply with that request." Am. Compl. ¶ 32. He further alleges in Count Two that the TSA, Blake, and other unknown TSA officials "failed to

---

(. . . continued)
instances," then such relief is unavailable under the "relevant principle of construction . . . that where . . . the statute provides for certain special types of equitable relief but not others, it is not proper to imply a broad right of injunctive relief" (emphasis added)). Thus, the real issue before the Court in Kursar II was not whether the Court had jurisdiction to entertain Kursar's Privacy Act claim, but rather whether the Court should dismiss this request for relief because it could not grant such relief. The proper rule for seeking such a dismissal is, of course, under Federal Rule of Civil Procedure 12(b)(6), and not Rule 12(b)(1). See Fed. R. Civ. P. 12(b)(6) (authorizing federal district courts to dismiss a complaint for the "failure to state a claim upon which relief can be granted").

Nonetheless, dismissal under the circumstances presented in Kursar II was unwarranted even under Rule 12(b)(6). Although it is true that Kursar did not plead a specific request for damages, he did request that the Court "[g]rant such other relief as [it] may deem just and proper," Compl. at 14. In such circumstances, the Court should not have dismissed the complaint "for failure to seek the technically appropriate remedy when the availability of some relief is readily apparent on the face of the complaint." Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1104 (D.C. Cir. 1985). Rather, "[t]he proper course of action at that point was to grant the plaintiff leave to amend [his] complaint . . . or to read such a . . . request into the prayer for 'other . . . relief.'" Id. While the Court did invite Kursar to seek leave to amend his complaint, Kursar II, 581 F. Supp. 2d at 20 n.5, dismissal of the plaintiff's claims at that time was inappropriate nonetheless.

To be sure, the Court's errors in this regard have no practical effect on this litigation, as Kursar amended his complaint to include an express prayer for damages in regards to his claim under Section 552a(g)(1)(C). In the interest of reaching correct decisions in accordance with the law of this Circuit, however, the Court would be remiss if it did not clarify and amend its prior reasoning.

[6] Kursar submitted a Privacy Act amendment request on October 13, 2008 to "amend all records maintained by the TSA that pertain to his employment and termination as a Federal Air Marshal in April 2002." Am. Compl. ¶ 28. After the TSA denied Kursar's request by letter on January 5, 2009, he appealed the decision two days later. Id. ¶¶ 29-30. Kursar then filed his amended complaint after thirty working days had elapsed without receipt of the TSA's decision. Id. ¶ 31.

maintain Kursar's records with such accuracy, relevance, timeliness[,] and completeness as is reasonably necessary to denote the basis for [his] termination," id. ¶ 41, and that they failed to "collect information" underlying his termination "directly from Kursar," which "resulted in adverse determinations . . . in violation of [Sections] 552a(e)(2), (g)(1)(C), and (g)(4)(A)," id. ¶ 42. In Count Three, Kursar alleges that the defendants failed to accurately maintain his records pursuant to Sections 552a(e)(5) and (g)(1)(A). Id. ¶ 53-54. Moreover, Kursar alleges in Count Four that the defendants "failed to make reasonable efforts to assure that [his] records [were] accurate, complete, timely, and relevant for agency purposes" before "disseminating [his] records . . . to persons other than an agency," id. ¶ 65, in violation of sections 552a(e)(6) and (g)(1)(A), id. ¶ 66. Finally, Kursar asserts in Count Five that the defendants "failed to accord Kursar any due process and denied him the full administrative rights that probationary federal employees in the employ of the TSA must be provided before their employment is terminated." Id. ¶ 73.

In response, the defendants request that the amended complaint be dismissed, that they be awarded judgment on the pleadings, or that they be awarded summary judgment. In support of its motion, they contend that Kursar's claims are barred by the doctrine of res judicata because he "already released these claims against the entire federal government" as a result of the settlement agreement reached in Kursar I. Def.'s Mem. at 11. In the alternative, the defendants argue that Kursar's Privacy Act claims are barred by the applicable two-year statute of limitations because he "was aware of his Privacy Act claim[s] in 2002, but waited more than five years to bring his claim." Id. at 15. Lastly, the defendants argue that they are entitled to summary judgment because Kursar "cannot show that [it] inaccurately maintained his records." Id. at 17.

In his opposition memorandum and cross-motion for summary judgment, Kursar asserts that he is not barred from raising his claims because (1) the claims in the present action do not arise from a "common nucleus of shared facts," Pl.'s Opp'n. at 18; (2) these claims were not resolved in Kursar I, id.; and (3) the settlement agreement in Kursar I did not encompass these claims, id. at 20. Kursar also disputes the defendants' assertion that his claims are barred by the two-year statute of limitations applicable to Privacy Act claims on the grounds that the limitations period was tolled due to the litigation before the MSPB, id. at 22, and that as to Count Four, he "did not know or have reason to know of the [TSA's alleged] unlawful dissemination of" his records, id. at 28. Finally, Kursar asserts that he is entitled to summary judgment because, inter alia, there is no material dispute of fact that Blake's findings regarding Kursar's responses on the SF-86 are inaccurate. Id. at 32.

## II.      Standards of Review

As previously observed, the defendants seeks dismissal of all claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. With regards to the defendants' motion to dismiss under Rule 12(b)(1), they fail to explicitly specify their basis for being entitled to dismissal of the claims on jurisdictional grounds. The only basis the Court can extrapolate from the defendants' submissions as to why this case should be dismissed for want of jurisdiction is their assertion that the claims are barred by res judicata. But, reliance on this legal doctrine is an affirmative defense that, "while having a somewhat jurisdictional character, does not affect the subject

matter jurisdiction of [a] district court."[7]  <u>Smalls v. United States</u>, 471 F.3d 186, 189 (D.C. Cir. 2006) (internal quotation marks omitted).  Without any other colorable basis for concluding that the Court lacks jurisdiction to adjudicate the claims presented before it, the defendants' motion to dismiss under Rule 12(b)(1) must be denied.  As for defendants' motion to dismiss Rule (12)(b)(6), or for judgment under Rules 12(c) or Rule 56, the Court sets forth the proper standards of review below.

I.      <u>Federal Rules of Civil Procedure 12(b)(6) and 12(c)</u>[8]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has properly stated a claim upon which relief may be granted.  <u>Woodruff v. DiMario</u>, 197 F.R.D. 191, 193 (D.D.C. 2000).  For a complaint to survive a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 8(a) requires that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a) does not require "detailed factual allegations," a plaintiff is required to provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007)), in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests," <u>Twombly</u>, 550 U.S. at 555 (citation omitted).  In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[7] This member of the Court recently observed that "a motion for dismissal based on res judicata properly falls under Federal Rule of Civil Procedure 12(b)(1)."  <u>Youngin's Auto Body v. District of Columbia</u>, ___ F. Supp. 2d ___, ___, 2010 WL 1916108, at *3 (D.D.C. 2010) (quoting <u>Rizvi v. McClure</u>, 597 F. Supp. 2d 63, 66 (D.D.C. 2009)). Given the Circuit's unambiguous holding in <u>Smalls</u>, however, the Court erred in <u>Youngin's Auto Body</u> by concluding that the doctrine of <u>res judicata</u> affects the Court's subject-matter jurisdiction.

[8] Because "[t]he standard of review for a motion to dismiss under [Rule] 12(c) is substantially the same as under [Rule] 12(b)(6)," <u>Plain v. AT&T Corp.</u>, 424 F. Supp. 2d 11, 20 n.11 (D.D.C. 2006) (Kennedy, J.), the Court will simply apply the ubiquitous standards for resolving Rule 12(b)(6) motions in addressing the defendants' Rule 12(c) motion.

face.'" Iqbal, ___ U.S. at ___, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556).  A complaint alleging facts that are "'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly 550 U.S. at 557).

In evaluating a Rule 12(b)(6) motion under this framework, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks and citations omitted), and the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice," Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted).  Although the Court must accept the plaintiffs' factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." Iqbal, ___ U.S. at ___, 129 S. Ct. at 1950.  If "the [C]ourt finds that [a] plaintiff[] [has] failed to allege all the material elements of [his] cause of action," then the Court may dismiss the complaint without prejudice, Taylor v. Fed. Deposit Ins. Corp., 132 F.3d 753, 761 (D.C. Cir. 1997), or with prejudice, provided that the Court "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted).

II.      Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56, a court will grant summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In determining which facts are material, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  While the court must draw "all justifiable inferences" in the non-moving party's favor, id. at 255, the non-moving party cannot rely on the "mere allegations or denials of his pleading" but "must set forth specific facts showing that there is a genuine issue for trial," id. at 248.  "The moving party is 'entitled to a judgment as a matter of law' [when] the nonmoving party has failed to make a sufficient showing on an essential element of [the] case with respect to which [the non-moving party] has the burden of proof." Celotex Corp., 477 U.S. at 323.

### III.     Legal Analysis

I.      Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) and Motion for Judgment Under Federal Rule of Civil Procedure 12(c)

As an initial matter, the Court is compelled to dismiss all of the Privacy Act claims against Blake and all unknown TSA agents, as the Act does not provide for civil remedies against individuals.  See 5 U.S.C. § 552a(g)(1) (stating only that an individual may bring a civil action against the agency); Martinez v. Bureau of Prisons, 444 F.3d 620, 624 (D.C. Cir. 2006) (citations omitted) (finding the "district court properly dismissed the named individual defendants" because the Privacy Act concerns "the obligations of agencies as distinct from individual employees in those agencies"); Armstrong v. U.S. Bureau of Prisons, 976 F. Supp. 17,

23 (D.D.C. 1997) (Urbina, J.) (noting that the Privacy Act does not allow a person to seek civil remedies against individuals, including individual officers or employees of an agency).  As to the remaining counts in the amended complaint—the Privacy Act claims against the TSA, as well as the Fifth Amendment claim against the TSA, Blake, and the unknown TSA officials—the issues confronting the Court are several: (1) whether the plaintiff has timely raised his Privacy Act claims within the applicable statute of limitations; (2) whether the plaintiff's Privacy Act and constitutional claims are barred by the doctrine of res judicata based on Kursar's settlement agreement with the Army in <u>Kursar I</u>; and (3) whether either party is entitled to summary judgment based on the undisputed facts in the record.  For the reasons discussed below, the Court finds that only Count Two is barred by the statute of limitations, and that the Court need not consider whether the doctrine of res judicata bars Counts One, Three, Four, and Five because it finds that these claims are without merit.[9]

A.    The Statute of Limitations

The defendants allege that the plaintiff's Privacy Act claims are barred by the Act's statute of limitations.  For claims arising under the Privacy Act, "[a]n action to enforce any liability . . . may be brought . . . within two years from the date on which the cause of action arises."  5 U.S.C. § 552a(g)(5).  A cause of action arises under the Privacy Act when "(1) an error was made in maintaining the plaintiff's records; (2) the plaintiff was harmed by the error; and (3) the plaintiff either knew or had reason to know of the error."  <u>Conklin v. U.S. Bureau of Prisons</u>, 514 F. Supp. 2d 1, 4 (D.D.C. 2007) (Walton, J.) (citations omitted); <u>see also</u> <u>Tijerina v.</u>

---

[9] As the Court clarified above, res judicata is an affirmative, rather than jurisdictional, defense, <u>see</u> <u>supra</u> p. 8, and thus the Court "may properly choose to bypass a . . . res judicata question in favor of deciding the merits."  18 Fed. Prac.  Proc. Juris. § 4403 (2d ed. 2002); <u>see also</u> <u>Berwind Corp. v. Comm'r of Soc. Sec.</u>, 307 F.3d 222, 233 n.14 (3d Cir. 2002) (declining to address a res judicata issue and proceeding to address the merits of the case "without violating the … prohibition against assuming hypothetical jurisdiction to reach the merits of a claim" (internal quotation marks omitted)).

Walters, 821 F.2d 789, 798 (D.C. Cir. 1987) ("[I]n a normal Privacy Act claim, the cause of action does not arise and the statute of limitation does not begin to run until the plaintiff knows or should know of the alleged violation."). Additionally, a "new cause of action does not arise each time an adverse determination is made based on the allegedly erroneous records." Conklin, 514 F. Supp. 2d at 4; see also Doe v. Thompson, 332 F. Supp. 2d 124, 133 (D.D.C. 2004) (Walton, J.). In the complaint here, Kursar alleges various violations of the Privacy Act in Counts One through Four, see Am. Compl. ¶¶ 32, 42, 54, 66, and thus, the time limitation imposed by Section 552a(g)(5) applies to these Counts.

To be sure, the statute of limitations period set forth in 5 U.S.C. § 552a(g)(5) is not a jurisdictional bar, Chung v. U.S. Dep't of Justice, 333 F.3d 273, 278 n.* (D.C. Cir. 2003), and thus the appropriate "procedural mechanism for considering [the defendant's] statute of limitations argument at this stage of the proceedings is Rule 12(b)(6)," Williams v. Chu, 641 F. Supp. 2d 31, 34 (D.D.C. 2009) (Walton, J.). And, in accordance with the standard of review applicable to Rule 12(b)(6) motions, a court should assess when a plaintiff knew or should have known of an alleged error from the facts pled, and only grant a motion to dismiss "if the complaint on its face is conclusively time-barred." Firestone, 76 F.3d at 1209; see also Ramirez v. Dep't of Justice, 594 F. Supp. 2d 58, 63 (D.D.C. 2009) (Roberts, J.) (finding a prisoner's Privacy Act suit in 2007 untimely after noting that the plaintiff's "own complaint establishes that he knew of inaccuracies . . . on July 22, 2004, if not earlier"); Bernard v. U.S. Dep't of Defense, 362 F. Supp. 2d 272, 279 (D.D.C. 2005) (Lamberth, J.) (finding the plaintiff's Privacy Act claims untimely where it was "clear from the administrative record that the plaintiff knew or should have known about his ability to request his medical records"); cf. Conklin, 514 F. Supp. 2d at 5 (denying the defendant's motion to dismiss as untimely because the "date on which

plaintiff knew or had reason to know of the alleged Privacy Act violations [was] unclear").

Applying these standards here, the Court concludes that only Count Two is barred by the Privacy

Act's statute of limitations.

           1.      Counts One, Three, and Four: Failure to Amend Kursar's Records

In Count One, Kursar challenges the TSA's denial of his request to amend his employee

records because he "has a legal right under the Privacy Act to have his records amended as

detailed in his request and appeal." Am. Compl. ¶ 32. More specifically, he alleges in Counts

Three and Four that he is entitled to relief under Section 552a(g)(1)(A) because the TSA failed to

accurately maintain his records in violation of Section 552a(e)(5), id. ¶ 54, and that the agency

disseminated inaccurate records without his authorization in violation of Section 552a(e)(6),[10] id.

¶ 66. For those civil claims brought against agencies for "mak[ing] a determination . . . not to

amend an individual's record in accordance with his request [under section 552a(d)(3)], or

fail[ure] to make such review in conformity with that subsection," § 552a(g)(1)(A), "the two[-

_____

[10] The Court previously observed that Section 552a(g)(1)(A) is the "only basis under which" Kursar could bring suit for violations of Sections 552a(e)(5) and 552a(e)(6). Kursar II, 581 F. Supp. 2d at 17 n.4. It is evident from the plain language of the Privacy Act, however, that the Court erred in reaching this conclusion, as this provision of the Act allows a plaintiff to bring a civil action for violations of Sections 552a(e)(5) and 552a(e)(6) under either Section 552a(g)(1)(C) or Section 552a(g)(1)(A). Specifically, an agency is required under Sections 552a(e)(5) and 552a(e)(6) to maintain accurate, relevant, timely, and complete records. See 5 U.S.C. § 552a(e)(5) (obligating an agency to "maintain all records which are used by the agency in making any determination of an individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination"); 5 U.S.C. § 552a(e)(6) (requiring the agency to "make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes" before disseminating the record outside of the government). And, where an individual has suffered an adverse determination as a result of the agency's failure to maintain accurate, timely, complete, and relevant records, then that individual can bring suit under Section 552a(g)(1)(C). See, e.g., Doe v. Fed. Bureau of Invest., 936 F.2d 1346, 1360 (D.C. Cir. 1991) ("The [Privacy] Act provides two avenues of redress for violations of subsection (e)(5). . . . [T]he individual normally may bring suit under subsection (g)(1)(A)[, and t]he other means . . . is provided by subsection (g)(1)(C).").

In the amended complaint, Kursar relies only on Section 552a(g)(1)(A) as the basis for obtaining relief from the TSA for its alleged violations of Sections 552a(e)(5) and 552a(e)(6). The Court acknowledges that Kursar may have relied on Kursar II in pleading his claims, and while it appears at first blush that the interests of justice would require the Court to grant him leave to further amend his complaint to assert relief under Section 552a(g)(1)(C), the Court is convinced that any claim that he could make under that section for purported violations of Sections 552a(e)(5) and 552a(e)(6) are time-barred for the identical reasons that his Section 552a(g)(1)(C) claim under Count Two is also barred. See infra p. 16-19.

]year [statute of limitations] period is measured from the denial of a request to amend." <u>Blazy v. Tenet</u>, 979 F. Supp. 10, 18 (D.D.C. 1997) (Friedman, J.), <u>aff'd</u>, 1998 WL 315583 (D.C. Cir. 1998); <u>see also</u> <u>Oppenheim v. Campbell</u>, 571 F.2d 660, 662 (D.C. Cir. 1978) (citing <u>Crown Coat Front Co., Inc. v. United States</u>, 386 U.S. 503, 510-11 (1967)) ("Appellee's action accrued when his right to resort to federal court was perfected."); <u>Doe v. U.S. Dep't of Labor</u>, 451 F. Supp. 2d 156, 168 n.12 (D.D.C. 2006) (Walton, J.) (vacated as a result to settlement agreement, 2007 WL 1321116 (D.D.C. 2007)) (stating that the statute of limitations for an action seeking damages under the Privacy Act begins to run when the plaintiff knows or should have known of the alleged violation, whereas the statute of limitations when seeking amendment of records begins from the denial of a request to amend). Here, Kursar submitted a Privacy Act amendment request to the TSA by email on October 13, 2008, Am. Compl. ¶ 20, and the TSA denied Kursar's amendment request by letter on January 5, 2009, <u>id.</u> ¶ 23. Kursar appealed this decision on January 7, 2009, but has not received a determination from the TSA. <u>Id.</u> ¶¶ 24-25. Since the statute of limitations for this claim began running when the TSA denied his amendment request in January 2009, and he filed his amended complaint approximately two months later on March 16, 2009, <u>id.</u> at 17, Kursar's claim seeking amendment of his records is timely.[11]

 2. <u>Count Two: Failure to Collect Information Directly From Kursar Before Reaching an Adverse Determination</u>

When an individual is seeking damages under the Privacy Act, exhaustion of administrative remedies is not required. <u>Nagel v. U.S. Dep't of Health, Educ. and Welfare</u>, 725

---

[11] This Court finds it troubling that Kursar was aware of the existence of allegedly incorrect records in 2002, but waited until 2009 to request amendment of his records. Nonetheless, the Court is not aware of any limitations period for seeking an amendment in a statute or otherwise compelled by binding case authority. And while an equitable defense such as laches may be applicable in this instance, <u>see</u> <u>Bassiouni v. Fed. Bureau of Invest.</u>, Civil Action No. 02-8918, 2003 WL 22227189, at *4 (N.D. Ill. 2003) (finding that running the statute of limitations from the date the amendment request under the Privacy Act was denied "would not foreclose an equitable defense such as <u>laches</u>"), the Court will not consider the defense as it was not raised by the TSA.

F.2d 1438, 1441 n.2 (D.C. Cir. 1984). The statute of limitations thus begins to run when the plaintiff "knows or should know of the alleged violation." Tijerina, 821 F.2d at 798. Kursar's own assertions in his amended complaint indicate the dates he became aware of the alleged violation. Namely, Kursar received notification on April 25, 2002, that the TSA intended to terminate him for "submitting false or incorrect information on his employment application and Standard Form 86." Am. Compl. ¶ 10. He acknowledged receipt of this information when he replied on April 29, 2002, denying the allegations. Id. ¶ 11. Further, Kursar received a letter on May 3, 2002, advising him that the TSA was terminating him "to promote the efficiency of the service." Id. ¶ 12. Because the record illustrates that the plaintiff knew, or should have known, of the purported inaccuracies by as early as April 25, 2002, the statute of limitations began to run at least by that date. However, Kursar did not file his initial complaint in this Court until November 6, 2007, more than two years later. See Compl. at 1. Kursar's claim for damages, therefore, is untimely.

To avoid the consequences resulting from the filing of untimely claims, courts may allow a plaintiff to bring Privacy Act claims beyond the two-year limitations period by employing the doctrine of equitable tolling to ensure that a plaintiff "is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit." Chung, 333 F.3d at 279 (citation and internal quotations marks omitted); see also Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (determining that equitable tolling, which applies to private defendants, also applies to suits against the United States unless Congress has specified otherwise). "The doctrine . . . applies most commonly when [a] plaintiff despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim," Chung, 333 F.3d at 278 (citation and internal quotations marks omitted), such as situations involving misconduct or misrepresentation by the

defendant, see Irwin, 498 U.S. at 96. However, "[f]ederal courts have typically extended equitable relief . . . sparingly" and are less likely to extend it where the claimant "failed to exercise due diligence in preserving his legal rights." Irwin, 498 U.S. at 96.

Here, Kursar argues that equitable tolling should apply to his claim because he first sought relief before the MSPB. Pl.'s Opp'n at 22. He reasons that a favorable determination in that forum would have precluded him from securing relief from this Court. Id. at 23. Kursar also argues that "sound policy" supports tolling the statute of limitations since his concurrent litigation was addressing the same merits and seeking the same relief. Id. at 26.

The Court is not persuaded. Interestingly enough, Kursar cites multiple cases in his opposition that illustrate the trend among courts that various grievance procedures do not toll an applicable statute of limitations. Pl.'s Opp'n at 23-25 (citing multiple cases including Ramirez and Del. State College v. Ricks, 449 U.S. 250 (1980)); see Ricks, 449 U.S. at 261 ("[W]e already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods."); Ramirez, 594 F. Supp. 2d at 64 ("Neither the filing of inmate grievances nor the submission of Privacy Act requests to the relevant agencies tolls the statute of limitations for filing a claim for damages."). While Kursar asserts that his litigation before the MSPB is distinguishable from these cases because he was seeking a judicial and not an administrative remedy, Pl.'s Opp'n at 24, the Court is not aware of any case authority recognizing that the distinction Kursar attempts to draw is of any legal significance. See Bernard, 362 F. Supp. 2d at 279 (finding no authority to support tolling the statute of limitations when a plaintiff pursued a judicial remedy by filing an action in the United States Court of Federal Claims, prior to filing it in the United States District Court for the District of Columbia).

In any event, tolling is inappropriate here because Kursar's pursuit of a remedy before the MSPB was in regards to his <u>termination</u> from the TSA, and not the <u>maintenance</u> of his TSA records, which of course is the issue at the heart of his Privacy Act claims. <u>See</u> Pl.'s Opp'n at 8 (asserting that the MSPB judge's "ruling was limited to the single issue of whether the TSA had terminated Kursar because of [his] past military service and/or in retaliation for past [Employment Rights Act] activity"). Kursar concedes as much, stating in his memorandum in opposition to the TSA's motion to dismiss that "[t]he MSPB . . . is not the proper venue for seeking judicial relief for most other legal claims, such as those which are derived from the Privacy Act." Pl.'s Opp'n at 26. And, seeking an entirely separate and independent remedy is no basis for tolling a statute of limitations. <u>Cf.</u> <u>Johnson v. Ry. Express Agency, Inc.</u>, 421 U.S. 454, 465-66 (1975) (finding that because "Congress clearly has retained . . . a remedy against private employment discrimination separate from and independent of . . . Title VII," the first action did not toll the statute of limitations for the second despite being based on the same facts). Given that the claims now before the Court, while related by facts similar to those brought before the MSPB, provide for different remedies, and existing case authority declining to find that pending administrative proceedings do not toll a statute of limitations in a civil case, <u>see</u> <u>Ricks</u>, 449 U.S. at 261, <u>Ramirez</u>, 594 F. Supp. 2d at 64, Kursar's argument that the statute of limitations was tolled by his concurrent MSPB litigation fails.

In sum, Kursar's claim for damages pursuant to section 552a(g)(1)(C) is untimely and thus is barred by the Privacy Act's two-year statute of limitations. However, his claims for injunctive relief pursuant to section 552a(g)(1)(A) are not barred as untimely, as the limitations period in which to seek such relief did not begin until after he exhausted the administrative remedies outlined in section 552a(d) and his request for that relief was denied. The Court now

turns to the merits of Kursar's remaining Privacy Act claims, as well as his Fifth Amendment claim.

II.     The Parties' Cross-Motions for Summary Judgment

        A.      Counts One, Three, and Four: the Privacy Act Claims

        As to the remaining Privacy Act claims, Kursar requests relief under section 552a(g)(1)(A), see Am. Compl. ¶¶ 32, 54, 66; see also Kursar II, 581 F. Supp. 2d at  17 n.4, which provides a civil remedy "[w]henever any agency . . . makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection," § 552a(g)(1)(A). "[S]ubsection (g)(1)(A) provides for the correction of any inaccurate or otherwise improper material in a record." Doe v. Chao, 540 U.S. 614, 618 (2004).

        Following an agency's denial of an amendment request, the plaintiff can bring a claim in federal court and "obtain de novo consideration of whether amendment is warranted." Skinner v. U.S. Dep't of Justice, 584 F.3d 1093, 1096 (D.C. Cir. 2009).  "If the court so finds, it may order the agency to amend the individual's record." Id. at 1096.  While the Privacy Act allows for amendment of "factual or historical" errors, it is not "a vehicle for amending the judgments of federal officials." Kleiman v. Dep't of Energy, 956 F.2d 335, 337-38 (D.C. Cir. 1992) (internal quotation marks and citation omitted); see also McCready v. Nicholson, 465 F.3d 1, 19 (D.C. Cir. 2006).  "Where a subjective evaluation is based on a multitude of factors . . . and there are various ways of characterizing some of the underlying events . . . it is proper to retain and rely on it." White v. Office of Pers. Mgmt., 787 F.2d 660, 662 (D.C. Cir. 1986).  Put differently, the Privacy Act, as a general matter, "allows for [the] correction of facts but not correction of opinions or judgments." McCready, 465 F.3d at 19.  If the information is capable of being

verified, however, "the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual." Id. "The burden is on the individual to establish the inaccuracy of a challenged record." Doe v. United States, 821 F.2d 694, 709 (D.C. Cir. 1987) (Mikva, J., dissenting); see also Mervin v. Fed. Trade Comm'n, 591 F.2d 821, 827 (D.C. Cir. 1978) (observing that for "requests such as . . . one to [a]mend allegedly inaccurate records" under the Privacy Act, the plaintiff bears the burden of proof).

In bringing these claims under Section 552a(g)(1)(A), Kursar is seeking to "expunge all records or information that [are] inaccurate, derogatory[,] or infringes upon [his] express or implied constitutional or statutory rights," or, alternatively, to order the TSA "to abide by Kursar's amendment request." Am. Compl. at 16. In his cross-motion for summary judgment, Kursar specifies that his "request for relief pertains exclusively to the TSA's records memorializing the issuance of the fact-based findings and the determination that the findings demonstrated that Kursar had submitted false information on his SF-86." Pl.'s Opp'n at 33. It is important to note that Kursar is not challenging the fact that the Washington National Guard offered him the option of proceeding with his resignation (which he tendered at the request of his supervisor) and receiving a general discharge under honorable conditions, rather than facing a proceeding in which the Washington National Guard would determine whether he should be adversely discharged, Pl.'s Opp'n, Ex. 4 (Declaration of Robert Kursar) ¶ 7, as a result of his "admittedly ill-advised decision to use [his] law enforcement credentials in order to gain access to a scuba-diving course," id. ¶ 5. Nor is there any dispute that "the Army Central Clearance Facility . . . temporarily suspended Kursar's security clearance in light of the conduct" relating to his improper use of his law enforcement credentials. Pl.'s Stmt. Facts ¶ 8. Rather, Kursar asserts that Blake's findings in the May 3, 2002 termination letter are false because (1) he was not

required to disclose his resignation from the Washington National Guard under question 22 of his SF-86 Form, Pl.'s Opp'n at 31, which asks the applicant to disclose whether, <u>inter</u> <u>alia</u>, he had ever "[l]eft a job by mutual agreement following allegations of unsatisfactory performance" or "for other reasons under unfavorable circumstances," Def.'s Mem., Ex. D (SF-86 Form for Robert Kursar) at 7, and (2) he did not have to reveal that the Army Central Clearance Facility had temporarily suspended his security clearance under question 26, Pl.'s Opp'n at 32, which asks whether he had "ever had a clearance or access authorization denied, suspended, or revoked," Def.'s Mem., Ex. D (SF-86 Form for Robert Kursar) at 8.

Based on a plain reading of the entire SF-86 Form, the Court concludes that Kursar has failed to demonstrate that he is entitled to have his records amended. Based on the undisputed facts discussed above, there can be no doubt that Kursar held a "job" within the military, that he resigned because of a mutual agreement between him and his supervisor, and that he left "following allegations of unsatisfactory performance"—that he improperly used his law enforcement credentials to gain admission to a scuba-diving course. Thus, he was required to disclose on his SF-86 Form that he "[l]eft a job by mutual agreement following allegations of unsatisfactory performance." Def.'s Mem., Ex. D (SF-86 Form for Robert Kursar) at 7. Likewise, as for Kursar's failure to disclose in response to question 26 the temporary suspension of his security clearance while serving in the Army, this is an even more clear-cut case. The question explicitly required Kursar to disclose any instance in which he "<u>ever</u> had a clearance . . . denied, <u>suspended</u>, or revoked." Def.'s Mem., Ex. D (SF-86 Form for Robert Kursar) at 8 (emphasis added). Kursar's arguments here are simply untenable.

Kursar's reliance on the sworn testimony of Carolyn Donahue, an employee at the TSA, Pl.'s Opp'n at 17, does not further his cause. Donahue testified before an MSPB administrative

judge that Kursar was not required to disclose his resignation from the Washington Army in response to question 22 because the SF-86 form "has [a] previous question . . . about [his] military record," and thus this question pertained only to "other kind[s] of work-related experiences."  Pl.'s Opp'n, Ex. 16 (MSPB testimony of Carolyn Donahue) at 2.  Even assuming that her interpretation of the SF-86 is reasonable (and the Court is not persuaded that it is), it cannot be said that Blake's interpretation of question 22 is demonstrably false.  As discussed in the preceding paragraph, one reasonable interpretation of question 22 is that it requires disclosure for any job, military or otherwise, that meets one of the conditions listed in the question.  Thus, Donahue's testimony at best reveals an ambiguity in question 22, and it was incumbent on Blake to exercise his judgment in assessing whether Kursar (or any applicant) can be reasonably expected to disclose any adverse decisions in the military context under question 22.  Notwithstanding what the Court finds to be an obvious reading of question 22, the Court concludes that Blake's conclusion was a "judgment[] of [a] federal official[]" that is not entitled to amendment under the Privacy Act.  Kleiman, 956 F.2d at 337-38.

Kursar also makes much ado about the TSA's failure to "produce[] any evidence that the interim suspension of Kursar's security clearance fell within the scope of [q]uestion []26," and that the TSA failed to take steps to verify that Kursar was required to list his discharge from the Washington National Guard on his SF-86.  Pl.'s Opp'n at 31-32.  But all the evidence necessary for Blake to interpret the SF-86 Form is the form itself; Blake was not required to take any steps to verify the meaning of SF-86 Form because a plain reading of the question was sufficient for him to reasonably conclude that Kursar should have disclosed these adverse actions on his SF-86.  In any event, the burden of proving the inaccuracy of records is on Kursar, not the TSA, Doe, 821 F.2d at 709, (Mikva, J., dissenting), and it is evident from the record that he has failed

by a wide margin to put forth evidence sufficient to survive the TSA's summary judgment motion.

B.    Count Five: Due Process Claim

Kursar also seeks a "name clearing hearing," asserting that the TSA violated his liberty interest under the Due Process Clause of the Fifth Amendment without providing him "a meaningful opportunity to respond to the fact-based findings."  Pl.'s Opp'n at 41.  In deciding this issue, the Court must "engage in a 'familiar two-part inquiry,'" to wit, "whether the plaintiff[] [was] deprived of protected property or liberty interests, and, if so, whether [he] received the process [he was] due."  Orange v. District of Columbia, 59 F.3d 1267, 1273 (D.C. Cir. 1995) (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982)).  Here, the Court need not decide the issue of whether Kursar was deprived of a protected liberty interest, because even assuming he suffered a deprivation of such an interest, he received all of the process due under the Fifth Amendment.

The Due Process Clause requires that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."  Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971).  Kursar received just that in this instance.  There is no dispute that Blake provided Kursar with a Proposed Notice of Termination on April 25, 2002, the purpose of which was "to officially notify [Kursar] of [Blake's] intent to terminate [Kursar's] employment with the [TSA]," and to notify Kursar that he was "entitled to submit a written answer to this notice of proposed termination[] and furnish any affidavits or other material in support of [his] answer."  Def.'s Mem., Ex. D (April 25, 2002 letter from William Blake to Robert Kursar), at 1; see also Pl.'s Stmt. of Facts ¶ 12 (acknowledgment by Kursar that Proposed Notice of Termination was issued

by Blake).  On May 3, 2002, after "carefully consider[ing Kursar's] written response," Blake concluded that Kursar's explanation was insufficient to reverse the initial finding by Blake that Kursar had "submitted an official document that contained false and/or misleading information." Def.'s Mem., Ex. G (May 3, 2002 Letter from William Blake to Robert Kursar) at 1.  Kursar, therefore, clearly received notice of the allegations and an opportunity to be heard; what he did not receive was the outcome that he desired, which unfortunately for him is not guaranteed by the Fifth Amendment.  See Segal v. City of New York, 459 F.3d 207, 216 (2d Cir. 2006) ("Because an at-will employee lacks a property interest in continued employment, she has no right to a particular outcome following an adequate name-clearing hearing; the government is simply required to provide her with an opportunity to salvage her name.")

Kursar does not contest the fact that he had an opportunity to respond to the Notice of Proposed Termination.  Rather, he argues that he did not receive a meaningful hearing because Blake "gave Kursar's written response nothing more than a mere cursory glance."  Pl.'s Opp'n at 44.  Yet, Kursar presents no evidence to this effect.  But even setting aside the question of whether Kursar received an adequate pre-termination hearing, Kursar has still been afforded all of the process that he is due because he was afforded the opportunity after his termination to amend his records pursuant to the Privacy Act.  As stated in the amended complaint, Kursar is simply asking for an opportunity to "refute and/or challenge the accuracy of the information underlying the fact-based findings that resulted in [his] termination," Am. Compl. at 16, which is the assertion of "no more than the right to submit evidence," Dickson v. Office of Pers. Mgmt., 828 F.2d 32, 41 (D.C. Cir. 1987).  Such relief "is precisely equivalent to that afforded him as of right under the Privacy Act," id., and Kursar exercised that right by seeking amendment of his

records with the TSA.[12]   The Due Process Clause requires nothing more.   Kursar's Fifth Amendment claim, therefore, is without merit.

## IV.   Conclusion

"[T]he Privacy Act does not allow a court to alter records that accurately reflect an administrative decision, nor the opinions behind that administrative decision, no matter how contestable the conclusions may be."  Leighton v. Cent. Intel. Agency, 412 F. Supp. 2d 30, 38 (D.D.C. 2006) (Oberdorfer, J.) (quoting Reinbold v. Evers, 187 F.3d 348, 360 (4th Cir. 1999)). And, it is apparent from the record before the Court that Kursar's complaint is premised on nothing more than a challenge to a decision made by a federal official in construing two non-technical questions listed on a SF-86 Form.  While Kursar may disagree with defendant Blake's interpretation of the SF-86 Form, his official judgment is not entitled to amendment under the Privacy Act.  As for Kursar's damages claim under the Privacy Act, the record conclusively establishes that his claim is barred by Section 552a(g)(5) because more than two years had passed between the time he received notice of what he believed to be an inaccurate termination notice and the filing of the present lawsuit.  Finally, Kursar is not entitled to any additional relief under the Due Process Clause of the Fifth Amendment, because even assuming that he has established the deprivation of a liberty interest, he has been afforded all of the process that he is constitutionally due.

Accordingly, the Court will grant in part and deny in part the defendants' motion to dismiss, deny as moot the defendants' motion for judgment on the pleadings, grant in part and

---

[12] To the extent that Kursar is requesting that this Court compel an oral hearing, the Circuit has already deemed such relief to fall outside the guarantees of the Due Process Clause in these circumstances.  Dickson, 828 F.2d at 41 (concluding that an individual seeking "to refute . . . allegedly erroneous information in his personnel file" does not have a right to an oral hearing because requiring the government to provide hearings in this circumstance "would disable government record keeping").

deny in part as moot the defendants' motion for summary judgment, and deny the plaintiff's cross-motion for summary judgment.

**SO ORDERED** this 22nd day of November, 2010.[13]

REGGIE B. WALTON
United States District Judge

---

[13] A final order will be issued contemporaneously with this memorandum opinion (1) denying the defendants' motion to dismiss for lack of subject-matter jurisdiction; (2) granting in part and denying in part the defendants' motion to dismiss for failure to state a claim upon which relief can be granted; (3) denying as moot the defendants' motion for judgment on the pleadings; (4) granting in part and denying in part as moot the defendants' motion for summary judgment; and (5) denying the plaintiff's cross-motion for summary judgment.